**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____ )
)
THE JAMES MADISON PROJECT, )
1250 Connecticut Avenue, N.W. )
Suite 700 )
Washington, DC 20036 )
)
and )
)
BRIAN J. KAREM, )
22 West Jefferson Street )          Civil No.  22-cv-321-CJN
Suite 309 )
Rockville, Maryland 20855 )
                              Plaintiffs, )
v. )
)
CENTRAL INTELLIGENCE AGENCY, )
Washington, DC 20301-1000 )
)
                              Defendant. )
_____ )

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, the Central Intelligence Agency ("CIA" or "Defendant") respectfully moves

for summary judgment pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7.

The reasons for this motion are set forth in the accompanying Memorandum of Points and

Authorities in Support of Defendant's Motion for Summary Judgment; Statement of Material

Facts as to Which There Is No Genuine Issue; and Declaration of Vanna Blaine.  A proposed

order is also attached.

Respectfully submitted this 1st day of December, 2022,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Branch Director

*/s/ Joseph J. DeMott*
Joseph J. DeMott (Va. Bar No. 93981)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 305-5981
Joseph.DeMott@usdoj.gov

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ | ) | |
| THE JAMES MADISON PROJECT, | ) | |
| 1250 Connecticut Avenue, N.W. | ) | |
| Suite 700 | ) | |
| Washington, DC 20036 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BRIAN J. KAREM, | ) | |
| 22 West Jefferson Street | ) | Civil No.  22-cv-321-CJN |
| Suite 309 | ) | |
| Rockville, Maryland 20855 | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| Washington, DC 20301-1000 | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

LEGAL STANDARD................................................................................................. 5

ARGUMENT ............................................................................................................. 6

I.       The CIA's Searches For The Requested Records Were Adequate Under The
         Circumstances. ............................................................................................... 6

II.      The CIA Properly Withheld Requested Records, As Well As Information About
         Their Volume And Nature, Pursuant to FOIA Exemptions 1 and 3.................. 9

         A.       The CIA Properly Withheld Requested Information Pursuant To
                  Exemption 1. .................................................................................... 10

         B.       The CIA Properly Withheld Requested Information Pursuant To
                  Exemption 3. .................................................................................... 14

         C.       The CIA Properly Issued A "No Number, No List" Response To Part 2
                  And Part 3 of Plaintiffs' Request. ...................................................... 16

III.     The CIA Properly Released All Reasonably Segregable Information............................ 21

CONCLUSION........................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Am. Civil Liberties Union v. CIA,*
   710 F.3d 422 (D.C. Cir. 2013) ................................................................. 16

*Am. Civil Liberties Union v. F.B.I.,*
   No. 11-cv-7562, 2015 WL 1566775 (S.D.N.Y. Mar. 31, 2015) ............................. 18

*Am. Civil Liberties Union v. U.S. Dep't of Def.,*
   628 F.3d 612 (D.C. Cir. 2011) ............................................................ 14, 15

*Ass'n of Retired R.R. Workers v. U.S. R.R., Retirement Bd.,*
   830 F.2d 331 (D.C. Cir. 1987) ................................................................. 14

*August v. FBI,*
   328 F.3d 697 (D.C. Cir. 2003) ................................................................. 5

*Baker & Hostetler LLP v. U.S. Dep't of Commerce,*
   473 F.3d 312 (D.C. Cir. 2006) ................................................................. 6

*Bassiouni v. CIA,*
   392 F.3d 244 (7th Cir. 2004) ............................................................ 9, 16, 17

*Brayton v. Office of U.S. Trade Representative,*
   641 F.3d 521 (D.C. Cir. 2011) ................................................................. 5

*Carter v. Nat'l Sec. Agency,*
   962 F. Supp. 2d 130 (D.D.C. 2013) *aff'd,*  2014 WL 2178708 (D.C. Cir. Apr. 23, 2014) ....... 15

*CIA v. Sims,*
   471 *U.S. 159 (1985)* ..................................................................... 15, 17

*Citizens for Responsibility & Ethics in Wash. v. U.S. DOJ,*
   160 F. Supp. 3d 226 (D.D.C. 2016) ........................................................... 14

*Comm. for Freedom of the Press v. F.B.I.,*
   548 F. Supp. 3d 185 (D.D.C. 2021) ........................................................... 18

*Ctr. for Nat'l Sec. Studies v. U.S. DOJ,*
   331 F.3d 918 (D.C. Cir. 2003) ............................................................... 13

*Davis v. U.S. DOJ,*
   460 F.3d 92 (D.C. Cir. 2006) ................................................................. 5

*DiBacco v. U.S. Army,*
   795 F.3d 178 (D.C. Cir. 2015) ............................................................... 14

*Elec. Priv. Info. Ctr. v. U.S. DOJ,*
  296 F. Supp. 3d 109 (D.D.C. 2017) ................................................................. 9, 14

*Fitzgibbon v. CIA,*
  911 F.2d 755 (D.C. Cir. 1990) ............................................................................ 13

*Frugone v. CIA,*
  169 F.3d 772 (D.C. Cir. 1999) ............................................................................ 13

*Gilliam v. U.S. DOJ,*
  128 F. Supp. 3d 134 (D.D.C. 2015) ...................................................................... 5

*Halperin v. CIA,*
  629 F.2d 144 (D.C. Cir. 1980) ............................................................... 15, 16, 17

*Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.,*
  608 F.2d 1381 (D.C. Cir. 1979) .......................................................................... 17

*Insider, Inc. v. U.S. Gen. Servs. Admin.,*
  --- F. Supp. 3d ---, 2022 WL 10449605 (D.D.C. Oct. 18, 2022) ........................... 6, 8

*James Madison Project v. U.S. DOJ,*
  208 F. Supp. 3d 265 (D.D.C. 2016) ...................................................................... 18

*Juarez v. U.S. DOJ,*
  518 F.3d 54 (D.C. Cir. 2008) ............................................................................... 21

*Judicial Watch, Inc. v. U.S. Dep't of Def.,*
  715 F.3d 937 (D.C. Cir. 2013) ....................................................................... 6, 10

*Larson v. U.S. Dep't of State,*
  565 F.3d 857 (D.C. Cir. 2009) .................................................................. 2, 13, 15

*Leopold v. CIA,*
  106 F. Supp. 3d 51 (D.D.C. 2015) ...................................................................... 15

*Mil. Audit Project v. Casey,*
  656 F.2d 724 (D.C. Cir. 1981) ....................................................................... 6, 10

*Miller v. U.S. DOJ,*
  872 F. Supp. 2d 12 (D.D.C. 2012) ........................................................................ 5

*Muttitt v. U.S, Dep't of State,*
  926 F. Supp. 2d 284 (D.D.C. 2013) ...................................................................... 4

*Nation Magazine v. U.S. Customs Serv.,*
  71 F.3d 885 (D.C. Cir. 1995) ................................................................................ 5

*New York Times Co. v. U.S. DOJ.,*
  756 F.3d 100 (2d Cir.) *opinion amended on denial of reh'g,* 758 F.3d 436
  (2d Cir. 2014), *supplemented*, 762 F.3d 233 (2d Cir. 2014) ................................... 16, 17

*Oglesby v. U.S. Dep't of Army,*
  920 F.2d 57 (D.C. Cir. 1990) ............................................................................. 5, 6, 9

*Open Soc'y Just. Initiative v. CIA,*
  505 F. Supp. 3d 234 (S.D.N.Y. 2020) *reconsideration denied,*
  2021 WL 4150522 (S.D.N.Y. Sept. 13, 2021), ........................................................ 18

*People for the Ethical Treatment of Animals v. Nat'l Institutes of Health,*
  745 F.3d 535 (D.C. Cir. 2014) ........................................................................... 9, 21

*Ray v. Turner,*
  587 F.2d 1187 (D.C. Cir. 1978) ............................................................................. 13

*SafeCard Servs. Inc. v. S.E.C.,*
  926 F.2d 1197 (D.C. Cir. 1991) ..................................................................... 6, 7, 8, 9

*Schrecker v. U.S. DOJ,*
  349 F.3d 657 (D.C. Cir. 2003) ................................................................................. 6

*Shapiro v. U.S. DOJ,*
  239 F. Supp. 3d 100 (D.D.C. 2017) ....................................................................... 17

*Sussman v. U.S. Marshals Serv.,*
  494 F.3d 1106 (D.C. Cir. 2007) ............................................................................. 21

*Vaughn v. Rosen,*
  484 F.2d 820 (D.C. Cir. 1973) ............................................................................... 17

*Weisberg v. U.S. DOJ,*
  627 F.2d 365 (D.C. Cir. 1980) ................................................................................. 5

*Whalen v. U.S. Marine Corps,*
  407 F.Supp.2d 54 (D.D.C. 2005) ........................................................................... 15

*Wolf v. CIA,*
  473 F.3d 370 (D.C. Cir.2007) ............................................................................... 13

**Federal Statutes**

5 U.S.C. § 552 ........................................................................................... 5, 10 14, 20

50 U.S.C. § 3024 ........................................................................................... 2, 8, 15

50 U.S.C. § 3507. ............................................................................................... 16

**Federal Regulations**

*Classified National Security Information*,
   Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009).................................................. 10, 11

**Other Authorities**

ODNI News Release No. 1-22, Statement from DNI Haines and DCIA Burns
   (Feb. 2, 2022), https://perma.cc/D9G3-E9P9. ..........................................................................2

## INTRODUCTION

This lawsuit involves a Freedom of Information Act ("FOIA") request that Plaintiffs, the James Madison Project and Brian J. Karem, submitted to Defendant, the Central Intelligence Agency ("CIA"), on January 21, 2022. Part 1 of the FOIA request seeks "a CIA intelligence assessment" regarding anomalous health incidents ("AHIs") reported by federal employees. Pls.' FOIA Request at 1–2, Ex. A to Decl. of Vanna Blaine ("Request"). Part 2 seeks "[a]ll intelligence information relied upon in formulating [the] conclusions" in that intelligence assessment. *Id.* at 2. Part 3 seeks "[a]ll factual, medical, and/or scientific findings made in the course of formulating [those] conclusions." *Id.*[1]

In response to part 1 of Plaintiffs' FOIA request, the CIA office responsible for examining AHIs searched its records and located three documents that encapsulate the CIA's interim findings, as of January 19-20, 2022, regarding AHIs. The CIA has described these documents and released portions of two of the three documents to Plaintiffs but withheld the remaining information under FOIA Exemption 1, which protects classified information, as well as FOIA Exemption 3, which protects information specifically exempted from disclosure by statute. In response to parts 2 and 3 of the request, the CIA provided a "no number, no list" response—that is, the CIA informed Plaintiffs that it had identified at least one record responsive to parts 2 and 3 of the request but could not provide the number of responsive records or further describe them without revealing information that is itself protected from disclosure under Exemptions 1 and 3.

---

[1] Part 4 of Plaintiffs' FOIA request, which seeks "[a]ll documentation memorializing talking points and briefing notes for U.S. Government personnel discussing the Assessment with media outlets, individual Members of Congress or staff with the House Permanent Select Committee on Intelligence/Senate Select Committee on Intelligence," is still being processed but is no longer at issue in this litigation. *See* Joint Status Report ¶ 1, ECF No. 11.

It is well established that classified information that "relates to intelligence sources and methods" is exempt from disclosure under the FOIA. *See, e.g.*, *Larson v. U.S. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). As detailed in the attached affidavit from a senior CIA official, all of the information withheld here plainly meets that description. The affidavit explains why much of the finished intelligence product sought by part 1 of Plaintiffs' FOIA request, and the underlying intelligence information sought by parts 2 and 3 of Plaintiffs' request, are (a) classified and (b) specifically exempted from disclosure by 50 U.S.C. § 3024. The affidavit further explains that the CIA cannot disclose information about the volume or nature of the documents responsive to part 2 or 3 of the request, including dates and page counts, because doing so would reveal classified intelligence sources and methods by indicating when and to what extent the CIA has gathered or obtained intelligence information regarding AHIs.

Because the CIA's search efforts were reasonable under the circumstances presented here, and the CIA's withholdings are justified under FOIA Exemptions 1 and 3, this Court should enter summary judgment for Defendant.

## BACKGROUND

In recent years, some federal employees have reported Anomalous Health Incidents, which are also referred to as unidentified health incidents or Havana Syndrome. The CIA Director has publicly acknowledged the CIA's involvement in the U.S. Government's "efforts to get to the bottom of" these incidents "and to deliver access to world-class care for those affected." *See, e.g.*, ODNI News Release No. 1-22, Statement from DNI Haines and DCIA Burns (Feb. 2, 2022), https://perma.cc/D9G3-E9P9.

On January 19, 2022, the CIA Director provided a brief statement to members of the news media regarding the CIA's investigation into AHIs. *See* Blaine Decl. ¶ 14; *cf.* Request at

1–2 (citing related news reports).  The Director stated that the CIA had "reached some significant interim findings" but was "not done" with its investigation.  Blaine Decl. ¶ 14.

On January 21, 2022, Plaintiffs submitted a FOIA request to the CIA.  Citing media reports about the CIA Director's statement from two days earlier, part 1 of the request seeks "a copy" of "the CIA's intelligence assessment" on AHIs, which the request terms "the Assessment."  Request at 1–2.  The request asserts that "[a]lthough the Assessment was widely described as an 'interim' report, it actually was not."  *Id.* at 2.  Part 2 of the request seeks "[a]ll intelligence information relied upon in formulating conclusions in the Assessment."  *Id.*  Part 3 of the request seeks "[a]ll factual, medical, and/or scientific findings made in the course of formulating the conclusions in the Assessment."  *Id.*  By letter dated February 7, 2022, the CIA acknowledged receipt of Plaintiffs' FOIA request and assigned it tracking number F-2022-00653.  *See* Acknowledgment Letter, Ex. B to Decl. of Vanna Blaine.

On February 7, 2022, Plaintiffs filed the present lawsuit.  *See* Compl., ECF No. 1.  On February 22, 2022, Plaintiffs amended their complaint.  *See* Am. Compl., ECF No. 4.  The amended complaint contains two counts: Count One seeks expedited processing of Plaintiffs' FOIA request, *id.* ¶¶ 12–16, and Count Two seeks disclosure of non-exempt records, *id.* ¶¶ 17–20.  On April 1, 2022, the CIA answered the amended complaint.  *See* Answer, ECF No. 6.

On June 3, 2022, the CIA sent an interim response letter to Plaintiffs.  *See* Blaine Decl. ¶ 9; First Interim Response Letter, Ex. C to Blaine Decl ("First Interim Response").  This letter informed Plaintiffs that the CIA had completed its search for records responsive to part 1 of their FOIA request, and identified two documents.  First Interim Response at 1.  The letter stated that the CIA was withholding both documents in their entirety pursuant to FOIA Exemptions 1 and 3.  *Id.*  The letter further informed Plaintiffs that the CIA had "identified at least one document

3

responsive to [parts 2 and 3] of the request," but could not "provide the number of responsive records or further describe them without revealing information that is itself protected from disclosure" pursuant to FOIA Exemptions 1 and 3. *Id.* at 1–2.

On September 16, the parties jointly proposed that Defendant file a motion for summary judgment by November 10, 2022. *See* Joint Status Report, ECF No. 11 ("JSR"). The Court adopted this schedule. *See* Minute Order of Sept. 19, 2022. On November 4, 2022, Defendant filed an unopposed motion for an extension of time, explaining that (1) undersigned counsel had recently been assigned as lead counsel and required additional time to prepare the motion for summary judgment; and (2) the "CIA require[d] additional time to assess whether it is possible to release any of the previously withheld information." Def.'s Mot. for Extension of Time, ECF No. 13. The Court granted Defendant's motion. *See* Minute Order of Nov. 9, 2022.

On November 30, 2022, the CIA sent another interim response letter to Plaintiffs. *See* Blaine Decl. ¶ 12; Additional Interim Response Letter, Ex. D to Blaine Decl. ("Additional Interim Response"). In the letter, the CIA provided a revised response to part 1 of Plaintiffs' request. *See* Additional Interim Response at 1. Specifically, the letter informed Plaintiffs that the CIA was releasing in part one of the two responsive documents that it had previously withheld in full, and that it had identified an additional responsive document that could be released in part. *Id.* In total, the CIA has identified three documents responsive to part 1 of Plaintiffs' request, two of which it has released in part and one of which it has withheld in full. Blaine Decl. ¶ 12.

The CIA maintains that Count One of the amended complaint is moot, as the CIA has now finished processing all three parts of the FOIA request that remain at issue in this litigation. *See, e.g.*, *Muttitt v. U.S, Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013) (claim for

expedited processing of FOIA request becomes moot once agency finishes processing the request). The parties' counsel have conferred, and Plaintiffs have agreed to withdraw Count One. Pursuant to this Court's minute order of November 9, 2022, Defendants now move for summary judgment on Count Two—the sole remaining claim in Plaintiffs' complaint.

## LEGAL STANDARD

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. U.S. DOJ*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011)). Summary judgment is warranted when an agency "demonstrates that no material facts are in dispute, [that] it has conducted an adequate search for responsive records, and [that] each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure" under one or more of the Act's enumerated exemptions. *Miller v. U.S. DOJ*, 872 F. Supp. 2d 12, 18 (D.D.C. 2012) (citing *Weisberg v. U.S. DOJ*, 627 F.2d 365 (D.C. Cir. 1980)); *see also August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (describing the Act's "nine enumerated exemptions . . . designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'"). Courts review agency responses to FOIA requests *de novo*. 5 U.S.C. § 552(a)(4)(B).

An agency has performed an adequate search for records responsive to a FOIA request when it "make[s] 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). The "adequacy of an agency's search is measured by a standard of reasonableness," *Davis v. U.S. DOJ*, 460 F.3d 92, 105 (D.C. Cir. 2006), and may be established by "reasonably detailed, nonconclusory affidavits describing [the

agency's] efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006).

As to an agency's withholdings, a court may award summary judgment in a FOIA action solely on the basis of information provided by the agency through declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail," that "demonstrate that the information withheld logically falls within the claimed exemption[s]," and that are "not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (footnote omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 941 (D.C. Cir. 2013) (citation omitted) (per curiam).

## ARGUMENT

### I.    The CIA's Searches For The Requested Records Were Adequate Under The Circumstances.

Under FOIA, "[t]he adequacy of an agency's search is measured by a 'standard of reasonableness,' and is 'dependent upon the circumstances of the case.'" *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003) (citation omitted). The agency need only search those systems in which it believes "responsive records are likely located." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). And a search is adequate if "reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs.*, 926 F.2d at 1201; *see also Insider, Inc. v. U.S. Gen. Servs. Admin.*, --- F. Supp. 3d ---, 2022 WL 10449605, at *1 (D.D.C. Oct. 18, 2022) (FOIA imposes duty "to search for . . . all nonexempt information"). An agency's affidavits describing its search are afforded a "presumption of good faith, which cannot be rebutted by purely speculative claims about the

existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (citations omitted).

Part 1 of Plaintiffs' FOIA request seeks "[a] copy" of "the CIA's intelligence assessment" (the "Assessment") on AHIs, which the request claims was referenced in a recent public statement by the Director of the CIA. Request at 1–2. The request states that the Assessment "asserted the majority of 1,000 cases of [AHIs] can be explained by other causes rather than a sustained global campaign by a foreign power." *Id.* at 1. The request further states: "Although the assessment was widely described as an 'interim' report, it actually was not." *Id.* at 2.

There is a particular CIA office charged with examining AHIs. Blaine Decl. ¶ 14. The CIA determined that any records responsive to part 1 of the request were likely to be found in the records maintained by this office "because the request sought information specifically related to the topic that the office is charged to examine." *Id.* Accordingly, the CIA searched for records responsive to part 1 of the request by consulting with a senior official in this office, "who is knowledgeable about the agency's AHI efforts and has access to the office's records." *Id.* As a result of this consultation, "the CIA determined that there was no singular 'Assessment' that meets the description in Plaintiffs' FOIA request." *Id.* However, in coordination with officials in the same office who have knowledge of and access to the records it maintains, "the CIA identified and located three documents from 19–20 January 2022 that encapsulate [its] interim findings" regarding AHIs "and coincide with the media coverage cited in Plaintiffs' FOIA request." *Id.* Liberally construing Plaintiffs' request for "the Assessment" as a request for the "interim findings" referenced in that media coverage, the CIA processed these three documents as responsive to part 1 of the request. *See id.*

This search was adequate under the circumstances.  Part 1 of Plaintiffs' request seeks a single record.  *See* Request at 2 ("[T]he Requesters are seeking . . . [a] copy of the Assessment[.]").  CIA's consultation with a knowledgeable senior official in the CIA office tasked with examining AHIs was "reasonably calculated to discover" whether such a record existed.  *See SafeCard Servs.*, 926 F.2d at 1201.  Once CIA determined that it did not possess any record meeting the description of "the Assessment" set forth in Plaintiffs' FOIA request, it was reasonable for CIA to construe part 1 of the request as seeking the "interim findings" referenced in the CIA Director's statement of January 19, 2022 and discussed in Plaintiffs' FOIA request.  CIA's further consultation with knowledgeable officials in the relevant office was reasonably calculated to produce those interim findings—and in fact yielded three documents that encapsulate those findings.  Accordingly, the CIA discharged its duty to conduct a reasonable search with respect to part 1 of Plaintiffs' request.

With respect to parts 2 and 3 of Plaintiffs' FOIA request, the CIA again determined that any responsive records would likely be found in the records maintained by the CIA office charged with examining AHIs, and consulted with "the same senior official within [that] office." Blaine Decl. ¶ 14 n.1.  That official "confirmed that the office is in possession of at least one responsive record."  *Id.*  As discussed further in Part III.B, below, the CIA determined that information about the volume and nature of these documents, including their dates and page counts, is both classified and specifically exempted from disclosure by 50 U.S.C. § 3024 because disclosing it would reveal intelligence sources and methods.  *See id.* ¶¶ 14 n.1, 19–21, 30–32. Consistent with this determination, the CIA did not conduct a further search.  *Id.* ¶ 14 n.1.

This search was also adequate under the circumstances.  When an agency is justified in "refusing to confirm or deny its possession of responsive documents"—known as a *Glomar*

response—"the agency need not conduct any search for responsive documents." *People for the Ethical Treatment of Animals v. Nat'l Institutes of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014). As the D.C. Circuit has explained, requiring a search under such circumstances "would be a meaningless—not to mention costly—exercise," given that the results of the search are fully exempt from disclosure. *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 934 (D.C. Cir. 2012). The same logic applies here. Once the CIA determined that it was necessary to issue a "no number, no list" response to parts 2 and 3 of Plaintiffs' request, it would have been an empty formality for the agency to search for records that it could neither release, even in part, nor catalogue on a traditional *Vaughn* index, due to the applicability of Exemptions 1 and 3. *See* Blaine Decl. ¶¶ 14 n.1, 19–21, 30–32; *see also Bassiouni v. CIA*, 392 F.3d 244, 246–47 (7th Cir. 2004) (describing *Glomar* and "no number, no list" responses as "functionally identical"). Accordingly, the CIA "satisfied its duty under FOIA to search for . . . all nonexempt information" responsive to parts 2 and 3 of Plaintiffs' request. *See Insider, Inc.*, 2022 WL 10449605 at *1.

In sum, the CIA searched the only location reasonably expected to have records responsive to Plaintiffs' FOIA request, *see Oglesby*, 920 F.2d at 68, and its searches were reasonably calculated to discover all responsive, non-exempt records, *see SafeCard Servs.*, 926 F.2d at 1201; *Elec. Priv. Info. Ctr.*, 678 F.3d at 934. Accordingly, the CIA is entitled to summary judgment on the issue of the adequacy of its searches.

## II.    The CIA Properly Withheld Requested Records, As Well As Information About Their Volume And Nature, Pursuant to FOIA Exemptions 1 and 3.

In response to part 1 of Plaintiffs' FOIA request, the CIA identified three responsive records, two of which it withheld in part and one of which it withheld in full under FOIA Exemptions 1 and 3. *See* Blaine Decl. ¶ 12. CIA has also provided a description of these

records, to the extent it is possible to describe them without disclosing exempt information. *See id.* ¶¶ 15–17. In response to parts 2 and 3 of Plaintiffs' FOIA request, the CIA provided a "no number, no list" response—*i.e.*, it indicated that it had at least one responsive document, but was withholding all responsive documents and information about their volume and nature under Exemptions 1 and 3. *See id.* ¶¶ 18–22. For the reasons set forth below, CIA's withholdings were justified.

### A.    The CIA Properly Withheld Requested Information Pursuant To Exemption 1.

FOIA Exemption 1 protects from disclosure materials that are "(A) specifically authorized under criteria established by an Executive [O]rder to be kept secret in the interest of national defense or foreign policy"; and "(B) are in fact properly classified pursuant to such Executive Order." 5 U.S.C. § 552(b)(1). Exemption 1 thus "establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order." *Military Audit Project v. Casey*, 656 F.2d 724, 737 (D.C. Cir. 1981). An agency may demonstrate Exemption 1 applies "by affidavit (or declaration)." *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 715 F.3d 937, 940 (D.C. Cir. 2013) (citation omitted).

An agency establishes that it has properly withheld information under Exemption 1 if it demonstrates that it has met the classification requirements of Executive Order 13526, the current Executive Order governing the classification of national security information. *See Classified National Security Information*, Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009). Section 1.1 of the Executive Order sets forth four requirements for the classification of national security information: (1) an original classification authority classifies the information; (2) the U.S. Government owns, produces, or controls the information; (3) the information is

within one of eight protected categories listed in section 1.4 of the Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in a specified level of damage to the national security, and the original classification authority is able to identify or describe the damages. *See* Exec. Order 13526 § 1.1(a). The categories of information that are subject to classification under Executive Order 13526 include "foreign government information"; "intelligence activities (including covert action), intelligence sources or methods, or cryptology"; and "foreign relations or foreign activities of the United States, including confidential sources." *Id.* § 1.4. Here, the Blaine Declaration amply demonstrates that the CIA has satisfied the four requirements of Executive Order 13526.

*First*, Ms. Blaine "hold[s] original classification authority" under Executive Order 13526, which means that she is authorized to make classification decisions at the TOP SECRET, SECRET, and CONFIDENTIAL levels. Blaine Decl. ¶ 2. In that capacity, she "ha[s] determined that the information withheld is currently and properly classified." *Id.* ¶ 23; *see also id.* ¶ 17.

*Second*, Ms. Blaine has verified "that the information being withheld is owned by and is under the control of the U.S. Government." *Id.* ¶ 25.

*Third*, the information sought by Plaintiffs' FOIA request plainly falls within one or more of the categories of information listed in § 1.4 of Executive Order 13526—specifically, the category pertaining to "intelligence activities (including covert action), [or] intelligence source and methods," *id.* (citing Exec. Order 13526 § 1.4(c)). Part 1 of the request expressly seeks "the CIA's intelligence assessment." Request at 1. The three responsive documents are "finished intelligence products on the topic of AHIs, which comprises intelligence information." Blaine

11

Decl. ¶ 26. Specifically, these documents are (1) a classified report entitled: "Worldwide: Anomalous Health Incidents Probably Not Global Campaign Against US Officials," *id.* ¶ 15; (2) a classified report entitled: "Examining Possible Natural and Environmental Causes of Worldwide Anomalous Health Incidents," *id.* ¶ 16; and (3) another classified document that is "similar in substance" to one of the first two documents, *id.* ¶ 17. "The CIA withheld classified information in [the first two documents] related to intelligence sources, methods, and activities, including the CIA's bases for the statement in the[ir] title[s]," *id.* ¶¶ 15–16, and it withheld the third document in full, *id.* ¶ 17. Parts 2 and 3 of the request seek the "intelligence information" underlying CIA's "intelligence assessment" on AHIs, as well as other subsidiary "findings." Request at 2. "The CIA's efforts to investigate AHIs constitute intelligence activities, and the manner in which the CIA gathers or obtains this information concerns intelligence sources and methods under Section 1.3(c) of [Executive Order 13526]." Blaine Decl. ¶ 26. Accordingly, not only the "intelligence information" sought by part 2 but also the "factual, medical, and/or scientific findings" sought by part 3 constitute "intelligence information gathered or obtained by the CIA on AHIs." *Id.*

*Fourth*, Ms. Blaine has "determined that the unauthorized disclosure of [the withheld] information. . . could reasonably be expected to result in damage to the national security." *Id.* ¶ 27. As Ms. Blaine explains, "the CIA has generally acknowledged that it is involved in the U.S. Government's efforts to investigate AHIs," but it "has not disclosed particular information it is withholding here – i.e., the specific information collected, the methods used, or even the scope of the information collected." *Id.* ¶ 28. Releasing the CIA's interim findings regarding AHIs and the bases for those interim findings "would reveal the underlying protected intelligence itself." *Id.* ¶ 27. "Such disclosure could reasonably be expected to expose [the]

CIA's sources and methods for gathering this information, the apportionment of [CIA] resources allocated to gathering this information, the existence or nonexistence of relationships with certain foreign entities, the CIA's collection capabilities, and potentially, [the] CIA's collection gaps, if they exist. *Id.* Further, releasing such intelligence information "could permit foreign intelligence services and other groups to disrupt CIA activities or exploit perceived weaknesses." *Id.* ¶ 28. U.S. adversaries could potentially use this information to "identify CIA sources, CIA officers, what the CIA knows or does not know about AHIs, [the] CIA's intelligence-gathering means and capabilities, or where the CIA expends its resources on AHIs or other intelligence interests," which could allow them to thwart the CIA's efforts. *Id.* ¶ 29.

The CIA's assessment of these risks to national security is entitled to judicial deference. *See, e.g.*, *Ray v. Turner*, 587 F.2d 1187, 1194 (D.C. Cir. 1978) (acknowledging that "the executive ha[s] unique insights into what adverse [e]ffects might occur as a result of public disclosure of a particular classified record" (citations omitted)); *Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990). "[I]n the FOIA context," the D.C. Circuit "ha[s] consistently deferred to executive affidavits predicting harm to the national security, and ha[s] found it unwise to undertake searching judicial review." *Ctr. for Nat'l Sec. Studies v. U.S. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003); *see also Larson*, 565 F.3d at 865 ("Today we reaffirm our deferential posture in FOIA cases regarding the 'uniquely executive purview' of national security.'" (citation omitted)). In according such deference, "a reviewing court must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (citation omitted). Moreover, Ms. Blaine's assessment that disclosure of the withheld information "could

13

reasonably be expected" to harm national security, *see* Blaine Decl. ¶¶ 15–17, 27, satisfies the

"foreseeable harm" requirement of 5 U.S.C. § 552(a)(8)(A).

    In sum, FOIA Exemption 1 properly applies to the withheld portions of the CIA's interim

findings deemed responsive to part 1 of Plaintiffs' FOIA request, as well as the underlying

intelligence information sought by parts 2 and 3 of Plaintiffs' request. *See, e.g.*, *Elec. Priv. Info.*

*Ctr. v. U.S. DOJ*, 296 F. Supp. 3d 109, 124–25 (D.D.C. 2017) (upholding invocation of

Exemption 1 where agency "pointed to an applicable Executive Order and established through its

declarations that the withheld material is properly classified under the Order's terms"); *Citizens*

*for Responsibility & Ethics in Wash. v. U.S. DOJ,* 160 F. Supp. 3d 226, 234–36 (D.D.C. 2016)

(similar).

    **B.**    **The CIA Properly Withheld Requested Information Pursuant To Exemption 3.**

    In addition to its determination that portions of its interim findings and the underlying

intelligence information are exempt from disclosure under FOIA Exemption 1, the CIA

determined that FOIA Exemption 3 applies to large portions of the CIA's interim findings and all

of the underlying intelligence information.

    Exemption 3 incorporates into FOIA "the protections of other shield statutes," *Am. Civil*

*Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 618 (D.C. Cir. 2011), by excluding from

the purview of FOIA "'matters' that are 'specifically exempted from disclosure by statute' if that

statute 'requires that the matters be withheld from the public in such a manner as to leave no

discretion on the issue' or 'establishes particular criteria for withholding or refers to particular

types of matters to be withheld.'" *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015)

(quoting 5 U.S.C. § 552(b)(3)). The "purpose of Exemption 3 [is] to assure that Congress, not the

agency, makes the basic nondisclosure decision." *Ass'n of Retired R.R. Workers v. U.S. R.R.*

*Retirement Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987); *see also id.* ("[T]he policing role assigned to the courts in [an Exemption 3] case is reduced.").  Following the Supreme Court's decision in *CIA v. Sims*, 471 U.S. 159 (1985), courts apply a two-pronged inquiry when evaluating an agency's invocation of Exemption 3.  *See id.* at 167–68.  First, the court must determine whether the statute qualifies as an exempting statute under Exemption 3.  *Id.*  Second, the court decides whether the withheld material falls within the scope of that exempting statute.  *Id.*

Here, the CIA has determined that the withheld records are not only classified but also protected from disclosure by § 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024.  *See* Blaine Decl. ¶¶ 34–36.  The statute authorizes the CIA—under the direction of the DNI—to "protect intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 3024(i)(1); *see also* Blaine Decl. ¶ 35 & n.2.  The D.C. Circuit has long recognized this statute as an exempting statute under Exemption 3.  *See Am. Civ. Liberties Union.*, 628 F.3d at 619 (citing prior holding that Section 102(A)(i)(1) qualifies as an Exemption 3 statute); *Carter v. Nat'l Sec. Agency*, 962 F. Supp. 2d 130, 139 (D.D.C. 2013*) aff'd*, 2014 WL 2178708 (D.C. Cir. Apr. 23, 2014).

The Supreme Court and the D.C. Circuit have interpreted § 102A(i)(1) broadly.  *See Sims*, 471 U.S. at 169 (recognizing the "broad sweep of [§ 102A(i)(1)'s] statutory language," as well as its lack of any "limiting language"); *Larson*, 565 F.3d at 865 (material is properly withheld under § 102A(i)(1) if it "relates to intelligence sources and methods"); *Halperin v. CIA,* 629 F.2d 144, 147 (D.C. Cir. 1980) (material is properly withheld under § 102A(i)(1) if it "can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods").  What is more, courts have described § 102A(i)(1)'s protection of sources and methods as "a 'near-blanket FOIA exemption."  *Leopold v. CIA*, 106 F. Supp. 3d 51, 57–58

15

(D.D.C. 2015) (quoting *Whalen v. U.S. Marine Corps,* 407 F.Supp.2d 54, 59 n. 5 (D.D.C. 2005)). As Ms. Blaine explains, in the present case Exemption 3 "applies co-extensively to all the information protected by Exemption [1] because the information relates to specific intelligence sources and methods." Blaine Decl. ¶ 36.

In addition, the CIA has determined that portions of the records responsive to parts 1, 2, and 3 of Plaintiffs' FOIA request are exempt from disclosure under Exemption 3, in conjunction with § 6 of the Central Intelligence Agency Act of 1949 ("CIA Act"), codified as amended at 50 U.S.C. § 3507. *See* Blaine Decl. ¶¶ 15–16, 21, 39. Section 6 expressly exempts the CIA from any provision of law that would otherwise "require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the [CIA]." 50 U.S.C. § 3507. The D.C. Circuit "has consistently held" that this statute (formerly codified as 50 U.S.C. § 403) is an "exempting statute[] of the type described in FOIA Exemption 3." *See, e.g.*, *Halperin*, 629 F.2d at 147 & n.7 (collecting cases). Accordingly, the CIA properly invoked Exemption 3 to withhold "names and other personally-identifying information of [CIA] personnel, such as functions, official titles, [CIA] identification numbers, and telephone numbers." Blaine Decl. ¶ 39.

**C.    The CIA Properly Issued A "No Number, No List" Response To Part 2 And Part 3 of Plaintiffs' Request.**

Several courts, including the D.C. Circuit, have held that an agency may properly issue a "no number, no list" response where describing the volume and nature of the responsive documents would disclose exempt information. *See New York Times Co. v. U.S. DOJ*, 756 F.3d 100, 122 (2d Cir.), *opinion amended on denial of reh'g*, 758 F.3d 436 (2d Cir. 2014), *supplemented*, 762 F.3d 233 (2d Cir. 2014); *Am. Civil Liberties Union v. CIA*, 710 F.3d 422, 433 (D.C. Cir. 2013) ("*ACLU*") (similar); *see also Bassiouni*, 392 F.3d at 246–47. While the D.C.

16

Circuit has cautioned that such a response is justified only "in unusual circumstances, and only by a particularly persuasive affidavit[,]" *ACLU*, 710 F.3d at 433, that test is satisfied here: Plaintiffs' request is unusual insofar as it expressly seeks an "intelligence assessment" and other "intelligence information," Request at 1–2, and, as detailed below, Ms. Blaine's declaration conclusively establishes that information about the volume and nature of the CIA's intelligence on AHIs is protected under FOIA Exemptions 1 and 3, *see* Blaine Decl. ¶¶ 18–22, 25–33, 36.

It is well established that an agency "has power to withhold superficially innocuous information on the ground that it might enable an observer to discover the identity of an intelligence source [or method]." *Sims,* 471 U.S. at 178 (1985); *see also Halperin*, 629 F.2d at 150; *Shapiro v. U.S. DOJ*, 239 F. Supp. 3d 100, 115 (D.D.C. 2017). As the Supreme Court has recognized, in some situations "the mere explanation of why information must be withheld can convey valuable information to a foreign intelligence agency." *Sims, 471 U.S.* at 179. Accordingly, the CIA "may withhold information on the number of responsive documents and a description of their contents if those facts are protected from disclosure by a FOIA exemption." *New York Times*, 756 F.3d at 122; *see also Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979) ("When the itemization and justification are themselves sensitive, however, to place them on public record could damage security in precisely the way that [an exemption] is intended to prevent."); *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973) (observing that agency's submissions "would not have to contain factual descriptions that if made public would compromise the secret nature of the information.").

Courts have repeatedly applied this principle in upholding "no number, no list" responses. For example, in *Bassiouni*, the requester sought all CIA records that mentioned him. *See* 392 F.3d at 245. The agency responded that it had one or more records but could provide no

details about the record or records. *Id.* As the Seventh Circuit explained in upholding this "no

number, no list" response:

> [T]he agency maintains that providing a list of the documents that mention
> [plaintiff], and claiming document-by-document exemptions for those whose
> contents are classified, would reveal details about intelligence-gathering methods.
> … It is easy to appreciate the basis of this concern. A list of documents could show
> clusters of dates that reveal when the agency acquired the information. Knowing
> which documents entered the files, and when, could permit an astute inference *how*
> the information came to the CIA's attention—and, in the intelligence business,
> "how" often means "from whom."

*Id.* Similarly, in *Reporters Committee for Freedom of the Press v. F.B.I.*, 548 F. Supp. 3d

185 (D.D.C. 2021), the court upheld a "no number, no list" response to a FOIA request seeking

FBI records regarding FBI agents posing as journalists and documentary filmmakers as an

investigative technique. *Id.* at 198–99. The court explained that providing the information

typically shown on a *Vaughn* index, or "[e]ven releasing the total number of responsive records,"

could aid wrongdoers in circumventing the law by "reveal[ing] . . . how often, where, and when

the agency uses the technique." *Id.* at 199–200. Likewise, in *Open Soc'y Just. Initiative v. CIA*,

505 F. Supp. 3d 234 (S.D.N.Y. 2020), *reconsideration denied*, No. 19-cv-1329, 2021 WL

4150522 (S.D.N.Y. Sept. 13, 2021), the Court affirmed the CIA's "no number, no list" response

for CIA records related to the killing of Jamal Khashoggi, holding that releasing the information

typically shown on a *Vaughn* index

> would give advantage to foreign intelligence services and other groups by giving
> them insight into what the United States' intelligence capabilities and interests are,
> or are not, which could enable adversaries to circumvent U.S. intelligence activities,
> and generally enhance its intelligence or counterintelligence activities at the
> expense of the U.S. national security.

*Id.* at 248. *See also James Madison Project v. U.S. DOJ*, 208 F. Supp. 3d 265, 286 (D.D.C.

2016) (agency properly refused to "[r]eveal the volume of responsive records or describ[e]

the individual documents withheld" because doing so could disclose exempt information);

18

*Am. Civil Liberties Union v. F.B.I.*, No. 11-cv-7562, 2015 WL 1566775, at *1-3 (S.D.N.Y. Mar. 31, 2015) (similar).

The CIA's "no number, no list" response was appropriate here. Each part of Plaintiffs' request seeks CIA intelligence information: part 1 seeks "finished intelligence products on the topic of AHIs, which comprises intelligence information"; part 2 "seeks the underlying intelligence information on this same topic"; and part three seeks "factual, medical, and/or scientific findings" that "are part of the intelligence information gathered or obtained by the CIA on AHIs." Blaine Decl. ¶ 26.

The CIA was able to release the number of documents responsive to part 1 of Plaintiffs' request because the CIA Director had previously revealed the existence of CIA interim findings on AHIs, *see* Blaine Decl. ¶ 14, and disclosing that those findings were "encapsulated" in three documents does not reveal exempt information (*e.g.*, the total amount of intelligence information on AHIs that the CIA has gathered or obtained, when the CIA gathered or obtained such information, or how the CIA gathered or obtained such information). The CIA was also able to provide descriptions of these three documents without disclosing exempt information, and to release portions of two of the three documents that contain information that the CIA Director has already made public. *See id.* ¶¶ 15–17.

In contrast, as Ms. Blaine explains, revealing "the number of documents responsive to part 2 or part 3 of the request, or the dates or page counts of those documents, would reveal intelligence sources and methods by potentially identifying the total amount of information gathered or obtained by the CIA, and when the CIA gathered or obtained information or expended intelligence-gathering resources to do so." *Id.* ¶ 26; *see also id.*

¶ 30 ("Among other things, disclosure of the volume of responsive records would tend to reveal the amount of resources the CIA has dedicated to this topic."). Such disclosures "could result in adversaries of the United States using this information to identify potential weaknesses in the CIA's intelligence-gathering efforts, and exploiting them to the detriment of national security." *Id.* ¶ 30. Specifically, releasing information about the records sought in part 2 of the request could enable U.S. adversaries "to compare details of the CIA's intelligence collection . . . against information already publicly available or in their possession," and could also "alert [such adversaries] to the CIA's intelligence-collection capabilities or priorities," potentially enabling them "to avoid detection by the CIA." *Id.* ¶ 31. And releasing information about the records sought in part 3 of the request "would inherently make public the CIA's factual, medical, and scientific intelligence collection capabilities," which could "place CIA collection capabilities at risk" and enable U.S. adversaries "to evade or exploit detection." *Id.* ¶ 32. Accordingly, Ms. Blaine determined that information about the volume and nature of records responsive to part 2 and part 3 of Plaintiffs' request is properly classified, as its disclosure "could reasonably be expected to cause irreparable harm to national security by impairing the [CIA]'s ability to carry out its core functions." *Id.*; *see also* ¶ 33. This determination also satisfies the "foreseeable harm" requirement of 5 U.S.C. § 552(a)(8)(A). Accordingly, the withheld information is covered by both Exemption 1 and Exemption 3. *See supra* Parts II.A, II.B. Thus, the CIA's "no number, no list" response was justified.

In sum, the CIA is entitled to summary judgment on the issue of its withholdings because all of the withheld information is properly exempt from the FOIA under Exemptions 1 and 3.

**III.    The CIA Properly Released All Reasonably Segregable Information.**

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). And a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. U.S. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008).

With respect to the three documents deemed responsive to part 1 of Plaintiffs' FOIA request, "the CIA conducted a line-by-line review of each . . . document[], and released all reasonably segregable, non-exempt information that could be released without potentially compromising classified or privileged information, or other information protected by the FOIA." Blaine Decl. ¶ 40. While the CIA withheld one of these records in full, it explained the basis for its conclusion that no segregable portions of the record could be released. *See id*. With respect to parts 2 and 3 of Plaintiffs' FOIA request, the CIA has determined—pursuant to Exemptions 1 and 3—that no records or portions of responsive records may be released, "as any such release . . . in whole or in part, would cause harm to national security." *Id.* ¶ 41; *see also People for the Ethical Treatment of Animals*, 745 F.3d at 540 (to the extent an agency is justified in refusing to confirm or deny its possession of responsive documents, it "need not . . . perform any analysis to identify segregable portions of such documents"). The CIA is therefore entitled to summary judgment on the issue of compliance with its segregability obligations.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendant's motion for summary judgment.

21

Respectfully submitted this 1st day of December, 2022,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Branch Director

*/s/ Joseph J. DeMott*
Joseph J. DeMott (Va. Bar No. 93981)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 305-5981
Joseph.DeMott@usdoj.gov

*Counsel for Defendant*