# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE JAMES MADISON PROJECT,　　　*
<u>et al</u>.　　　　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　Plaintiffs,　　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　v.　　　　　　　　　　　　*　　Civil Action No. 22-321 (CJN)
　　　　　　　　　　　　　　　　　　*
CENTRAL INTELLIGENCE AGENCY　*
　　　　　　　　　　　　　　　　　　*
　　　　　Defendant.　　　　　　　*
　　　　　　　　　　　　　　　　　　*
*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*　　*

# MEMORANDUM IN OPPOSITION TO DEFENDANT'S
# <u>MOTION FOR SUMMARY JUDGMENT</u>

# **Table of Contents**

FACTUAL BACKGROUND ................................................................................................... 2

ARGUMENT ....................................................................................................................... 5

   STANDARD OF REVIEW ............................................................................................... 5

      Federal Rule of Civil Procedure 56 ............................................................................ 5

      Review Under FOIA ................................................................................................... 6

   SUMMARY JUDGMENT IS NOT CURRENTLY WARRANTED REGARDING
   THE ADEQUACY OF CIA'S SEARCHES ..................................................................... 7

      Part 1 Of The FOIA Request ...................................................................................... 7

      Parts 2 And 3 Of The FOIA Request .......................................................................... 9

   CIA HAS NOT SUFFICIENTLY DEMONSTRATED ITS REDACTIONS AND
   WITHHOLDINGS ARE APPROPRIATE UNDER EXEMPTION ONE OR
   EXEMPTION THREE ……………………………………………………………………12

      Part 1 Of The FOIA Request .................................................................................... 13

      Parts 2 And 3 Of The FOIA Request ........................................................................ 14

   CIA HAS FAILED TO DEMONSTRATE THAT ALL SEGREGABLE PORTIONS
   OF THE RESPONSIVE RECORDS HAVE BEEN RELEASED .............................. 15

   CONCLUSION ............................................................................................................. 17

# <u>Table of Authorities</u>

**Cases**

<u>ACLU v. CIA</u>, 109 F. Supp. 3d 220 (D.D.C. 2015) ......................................................... 10

<u>ACLU v. CIA</u>, 710 F.3d 422 (D.C. Cir. 2013) ...................................................10-11, 14-15

<u>ACLU v. Dep't of Defense</u>, 628 F.3d 612 (D.C. Cir. 2011) …………………………… 13

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986)..................................................... 5

<u>Assassination Archives & Research Ctr. v. CIA</u>, 334 F.3d 55 (D.C. Cir. 2003)............... 6

<u>Bassiouni v. CIA</u>, 392 F.3d 244 (7th Cir. 2004)............................................................... 11

<u>Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State</u>, 818 F. Supp.
  1291 (N.D. Cal. 1992)................................................................................................. 15

<u>Campbell v. Dep't of Justice</u>, 164 F.3d 20 (D.C. Cir. 1998) ...................................7, 12-13

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) .................................................................. 6

<u>Church of Scientology, Inc. v. Turner</u>, 662 F.2d 784 (D.C. Cir. 1980)............................. 7

<u>Coldiron v. Dep't of Justice</u>, 310 F. Supp. 2d 44 (D.D.C. 2004) ................................ 12-13

<u>Davin v. Dep't of Justice</u>, 60 F.3d 1043 (3d Cir. 1995) .................................................. 15

<u>DeJesus v. WP Co. LLC</u>, 841 F.3d 527 (D.C. Cir. 2016)................................................... 5

<u>Dep't of Air Force v. Rose</u>, 425 U.S. 352 (1976) .............................................................. 6

<u>Dep't of Justice v. Reporters Committee for Freedom of the Press</u>, 489 U.S. 749 (1989). 6

<u>Dep't of State v. Ray</u>, 502 U.S. 164 (1991)........................................................................ 6

<u>DiBacco v. Dep't of the  Army</u>, 926 F. 3d 827 (D.C. Cir. 2019) ..................................... 13

<u>Elec. Frontier Found. v. Dep't of Justice</u>, 384 F. Supp. 3d 1 (D.D.C. 2019) ................... 11

<u>FBI v. Abramson</u>, 456 U.S. 615 (1982) ............................................................................. 6

<u>Frugone v. CIA</u>, 169 F.3d 772 (D.C. Cir. 1999)............................................................... 12

<u>Gardels v. CIA</u>, 689 F.2d 1100 (D.C. Cir. 1982).............................................................. 7

Goldberg v. U.S. Dep't of State, 818 F.2d 71 (D.C. Cir. 1987) ...................................... 12

Jefferson v. Dep't of Justice, 168 F. App'x 448 (D.C. Cir. 2005).................................... 8

JMP, et al. v. ODNI, Civil Action No. 22-0674 (D.D.C.)(TNM)..................................... 6

Judicial Watch, Inc. v. Dep't of Homeland Sec., 857 F. Supp. 2d 129 (D.D.C. 2012) ...... 9

Kimberlin v. Dep't of Justice, 139 F.3d 944 (D.C. Cir. 1998) ........................................ 15

King v. Dep't of Justice, 830 F.2d 210 (D.C. Cir. 1987).................................................. 6

Larson v. Dep't of State, 565 F.3d 857 (D.C. Cir. 2009) ................................................. 13

Lawyers Committee for Human Rights et al v. INS, 721 F. Supp. 552 (S.D.N.Y. 1989) 12

Nat'l Sec. Counselors v. CIA, 960 F. Supp. 2d 101 (D.D.C. 2013) .................................. 6

Oglesby v. Dep't of the Army, 920 F.2d 57 (D.C. Cir. 1990)............................................ 8

Open Soc'y Justice Initiative v. CIA, 505 F. Supp. 3d 234 (S.D.N.Y. 2020) .................. 11

PHE, Inc. v. Dep't of Justice, 983 F.2d 248 (D.C. Cir. 1993) ........................................... 7

Prop. Of People v. Dep't of Justice, 405 F. Supp. 3d 99 (D.D.C. 2019) .......................... 11

Pub. Citizen Health Research Group v. FDA, 185 F.3d 898 (D.C. Cir. 1999).................. 5

Reporters Comm. for Freedom of the Press v. FBI, 548 F. Supp. 3d 185 (D.D.C. 2021)
   ................................................................................................................................ 11, 14

The James Madison Project v. Dep't of Justice, 208 F. Supp. 3d 265 (D.D.C. 2016) ..... 11

Truitt v. Dep't of State, 897 F.2d 540 (D.C. Cir. 1990) ..................................................... 7

Voinche v. FBI, 46 F.Supp.2d 26 (D.D.C. 1999) ............................................................. 15

Zynovieva v. Dep't of State, 2021 U.S. Dist. LEXIS 146798 (D.D.C. Aug. 5, 2021)
   .............................................................................................................................. 10-11, 14

**Statutes**

5 U.S.C. § 552................................................................................................................. 15

**Other Authorities**

*https://arstechnica.com/tech-policy/2018/09/us-intelligence-thinks-russia-may-have-microwaved-us-embassies-in-cuba-china/* ..................................................................... 2

*https://www.bbc.com/news/world-58396698* ........................................................................ 2

*https://www.bbc.com/news/world-us-canada-60068483* ..................................................... 3

*https://www.cnn.com/2022/01/20/politics/havana-syndrome-illness-cia-report/ index.html* ...................................................................................................................... 3

*https://www.foxnews.com/politics/cia-interim-report-havana-syndrome-not-from-hostile-power-campaign-critics* .................................................................................. 3

*https://www.msn.com/en-us/news/world/cia-says-havana-syndrome-not-result-of-sustained-global-campaign-by-hostile-power/ar-AASXrM5?ocid= uxbndlbing* ........... 3

*https://www.nbcnews.com/politics/national-security/cia-says-havana-syndrome-not-result-sustained-global-campaign-hostile-rcna12838* .................................................. 3

*https://www.nbcnews.com/politics/national-security/havana-syndrome-symptoms-small-group-likely-caused-directed-energy-say-rcna14584* .................................................. 4

*https://www.nytimes.com/2018/09/01/science/sonic-attack-cuba-microwave.html* ........... 3

*https://www.nytimes.com/2021/10/08/us/politics/havana-syndrome-biden-law.html* ........ 2

*https://www.nytimes.com/2022/02/02/us/politics/havana-syndrome-radio-energy.html* ... 5

*https://www.politico.com/news/2022/01/20/havana-syndrome-cia-congress-527527* ....... 3

*https://www.politico.com/news/2022/02/02/directed-energy-unsolved-havana-syndrome-00004799* ................................................................................................................. 4

*https://www.usatoday.com/story/news/2022/01/20/havana-syndrome-cia-finds-no-campaign-hostile-foreign-power/6591297001/* ............................................................. 4

*https://www.washingtonpost.com/national-security/2022/ 02/02/external-energy-source-may-explain-havana-syndrome-panel-finds-renewing-questions-about-possible-foreign-attack/* ................................................................................................................ 4

*https://www.washingtonpost.com/national-security/cia-havana-syndrome-investigation-russia/2022/01/20/2f86d89e-795c-11ec-bf97-6eac6f77fba2_story.html* ....................... 3

**Rules**

Fed. R. Civ. P. 56(c) .......................................................................................................... 5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE JAMES MADISON PROJECT, <u>et al</u>. | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 22-321 (CJN) |
| | * | |
| CENTRAL INTELLIGENCE AGENCY | * | |
| | * | |
| Defendant. | * | |
| | * | |

*   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiffs The James Madison Project and Brian J. Karem (referred to jointly as the "Plaintiffs") brought this action under the Freedom of Information Act ("FOIA") to secure the release of documents improperly withheld by Defendant Central Intelligence Agency ("CIA") with respect to its intelligence assessment (and underlying information relied upon) of anomalous health incidents (known as "AHIs" or sometimes more commonly referred to by the misnomer "Havana Syndrome").

Presently before this Court is CIA's Motion for Summary Judgment (filed December 1, 2022), Dkt. No. 14 ("CIA's Memo") which argues it has met its FOIA obligations with respect to the adequacy of its search for responsive records, the information withheld from responsive records in reliance upon FOIA Exemptions 1 and 3, and the issuance of a "no number, no list" response in reliance upon the same exemptions. The Plaintiffs respectfully dispute CIA's arguments, and specifically contend there remain genuine issues of material fact in dispute that preclude awarding summary judgment at this time.

Respectfully, this Court should deny CIA's Motion, order further processing and require the release of any additional non-exempt records or portions.

## FACTUAL BACKGROUND

The FOIA request underlying this present case revolves around the U.S. Government's investigation into AHIs, and particularly CIA's intelligence assessment regarding the source of AHIs (hereinafter referred to generally as the "Assessment"). Some of the factual and procedural background at issue in this proceeding is set out in the Declaration of Vanna Blaine, Dkt. No. 14-2 (filed December 1, 2022)("Blaine Decl."), which is incorporated herein by reference.[1]

In recent years, more than two hundred U.S. Government officials who were based in multiple countries, including domestically within the Washington, D.C. metropolitan area, have reported experiencing AHIs. See First Amended Complaint ("FAC"), Dkt. No. 4 at ¶7 (filed February 22, 2022). See e.g., New York Times, Biden Signs Legislation to Compensate Victims of Mysterious 'Havana Syndrome', October 8, 2021, *https://www.nytimes.com/2021/10/08/us/politics/havana-syndrome-biden-law.html* (last accessed January 2, 2023); BBC News, "'Havana syndrome ' and the mystery of the microwaves," BBC News, September 9, 2021, *https://www.bbc.com/news/world-58396698* (last accessed January 2, 2023)*;* Arstechnica, "US Intelligence thinks Russia may have microwaved US embassies in Cuba, China," September 11, 2018, *https://arstechnica.com/tech-policy/2018/09/us-intelligence-thinks-russia-may-have-microwaved-us-embassies-in-cuba-china/* (last accessed January 2, 2023); New York Times, "Microwave

---

[1] The information provided in the Blaine Declaration is incorporated only in relation to paragraphs 6 through 12, and only to the extent the statements do not constitute legal characterizations or conclusions regarding the legal appropriateness of CIA's actions.

Weapons Are Prime Suspect in Ills of U.S. Embassy Workers," September 1, 2018, *https://www.nytimes.com/2018/09/01/science/ sonic-attack-cuba-microwave.html* (last accessed January 2, 2023).

On January 19, 2022, media reporting announced that CIA believes most cases of AHIs are unlikely to have been caused by a foreign adversary. See Dkt. No. 4 at ¶8. Instead, the Assessment asserted the majority of 1,000 cases of AHIs can be explained by other causes rather than a sustained global campaign by a foreign power: See e.g. (a) *https://www.nbcnews.com/politics/national-security/cia-says-havana-syndrome-not-result-sustained-global-campaign-hostile-rcna12838* (last accessed January 12, 2023); (b) *https://www.nytimes.com/2022/01/20/us/politics/havana-syndrome-cia-report.html* (last accessed January 12, 2023); (c) *https://www.msn.com/en-us/news/world/cia-says-havana-syndrome-not-result-of-sustained-global-campaign-by-hostile-power/ar-AASXrM5?ocid=uxbndlbing* (last accessed January 12, 2023); (d) *https://www. washingtonpost.com/national-security/cia-havana-syndrome-investigation-russia/2022/01/20/2f86d89e-795c-11ec-bf97-6eac6f77fba2_story.html* (last accessed January 12, 2023); (e) *https://www.bbc.com/news/world-us-canada-60068483* (last accessed January 12, 2023); (f) *https://www.cnn.com/2022/01/20/politics/havana-syndrome-illness-cia-report/ index.html* (last accessed January 12, 2023); (g) *https://www.foxnews.com/politics/cia-interim-report-havana-syndrome-not-from-hostile-power-campaign-critics* (last accessed January 12, 2023); (h) *https://www. politico.com/news/2022/01/20/havana-syndrome-cia-congress-527527* (last accessed January 12, 2023). See FAC, Dkt. No. 4, at ¶8.

Although the Assessment was widely described as an "interim" report, it actually was not. Id. at ¶9. A U.S. intelligence official told USA TODAY that while the report is technically classified as an interim assessment, it is a definitive and official agency finding based on months of intensive investigation into what was widely believed to be a sustained attack on U.S. spies and diplomats overseas by a hostile foreign power. Id. See *https://www.usatoday.com/story/news/2022/01/20/havana-syndrome-cia-finds-no-campaign-hostile-foreign-power/6591297001/* (last accessed January 12, 2023).

On February 2, 2022, the Office of the Director of National Intelligence ("ODNI") announced that a panel convened by the U.S. intelligence community had concluded the core symptoms of unsolved AHIs could be caused by pulsed electromagnetic or ultrasonic energy. FAC, Dkt. No. 4, at ¶10. A declassified executive summary of the intelligence community's assessment found that the effects of the mysterious illness are "genuine and compelling", and that psychological factors or mass hysteria on their own could not account for the core characteristics of AHIs. Id.[2] The announcement came one day after President Joe Biden designated senior National Security Council official Maher Bitar as the governmentwide coordinator for AHIs. Id. See, e.g., *https://www.politico. com/news/2022/02/02/directed-energy-unsolved-havana-syndrome-00004799* (last accessed January 12, 2023); *https://www.nbcnews.com/politics/national-security/havana-syndrome-symptoms-small-group-likely-caused-directed-energy-say-rcna14584* (last accessed January 12, 2023); *https://www.washingtonpost.com/national-security/2022/ 02/02/external-energy-source-may-explain-havana-syndrome-panel-finds-renewing-questions-about-possible-foreign-attack/* (last accessed January 12, 2023); *https://www.ny*

---

[2] Documents related to this ODNI panel are the subject of an ongoing FOIA lawsuit in JMP, et al. v. ODNI, Civil Action No. 22-0674 (D.D.C.)(TNM).

*times.com/2022/02/02/us/politics/havana-syndrome-radio-energy.html* (last accessed

January 12, 2023). <u>See</u> FAC, Dkt. No. 4, at ¶10.

**<u>ARGUMENT</u>**

**I.   STANDARD OF REVIEW**

   **A.   Federal Rule of Civil Procedure 56**

   Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure

should be awarded to a movant if "the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The

Court must view the evidence in the light most favorable to the non-moving party,

<u>DeJesus v. WP Co. LLC</u>, 841 F.3d 527, 531 (D.C. Cir. 2016), accept the non-moving

party's evidence as true, and draw "all justifiable inferences" in the nonmoving party's

favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

   The Court, however, need not rely on any "conclusory allegations unsupported by

factual data," <u>Pub. Citizen Health Research Group v. FDA</u>, 185 F.3d 898, 908 (D.C. Cir.

1999)(internal quotation marks and citations omitted), and should only find that "there is

a genuine issue for trial" where "there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party." <u>Anderson</u>, 477 U.S. at 249 (citation

omitted).

   An issue is "genuine" if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." <u>Id</u>. at 248. If there are no genuine issues of material

fact, the moving party is entitled to judgment as a matter of law if the nonmoving party

"fails to make a showing sufficient to establish the existence of an element essential to

5

that party's case, and on which that party will bear the burden of proof at trial." Celotex

Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### B. Review Under FOIA

"[D]isclosure, not secrecy, is the dominant objective" of FOIA. Dep't of Air Force v.

Rose, 425 U.S. 352, 361 (1976). Importantly, FOIA's primary purpose is to shed light on

the operation of government. Dep't of Justice v. Reporters Committee for Freedom of the

Press, 489 U.S. 749, 773 (1989). "This purpose is effectuated by 'facilitat[ing] public

access to government documents,'" Dep't of State v. Ray, 502 U.S. 164, 173 (1991), and

by "pierc[ing] the veil of administrative secrecy and [] open[ing] agency action to the

light of public scrutiny." Rose, 425 U.S. at 361. These citations are not mere platitudes

but, rather, important principles of open, democratic government.

In a FOIA case, the Court exercises *de novo* review and summary judgment is only

available to a defendant agency that has fully discharged its obligations.

See Assassination Archives & Research Ctr. v. CIA, 334 F.3d 55, 57 (D.C. Cir. 2003).

The general rule in FOIA cases is that if an agency's affidavit describes the justifications

for withholding the information with specific detail, demonstrates that the information

withheld logically falls within the claimed exemption and is not contradicted by contrary

evidence in the record or by evidence of the agency's bad faith, then summary judgment

is warranted on the basis of the affidavit alone. See Nat'l Sec. Counselors v. CIA,

960 F.Supp.2d 101, 164 (D.D.C. 2013). Additionally, it is beyond settled that FOIA

exemptions are to be construed narrowly. FBI v. Abramson, 456 U.S. 615, 630 (1982).

"The significance of agency affidavits in a FOIA case cannot be underestimated."

King v. Dep't of Justice, 830 F.2d 210, 218 (D.C. Cir. 1987). This well-established axiom

exists because in FOIA cases "the agency alone possesses knowledge of the precise content of documents withheld", thereby forcing both the FOIA requester and the court to "rely upon the agency's representations for an understanding of the material sought to be protected." Id.

To lawfully withhold information an agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." Id. at 219. See also Church of Scientology, Inc. v. Turner, 662 F.2d 784, 787 (D.C. Cir. 1980)("We have consistently maintained that vague, conclusory affidavits, or those that merely paraphrase the words of a statute, do not allow a reviewing judge to safeguard the public's right of access to government records."). Most importantly, specificity is the defining requirement of the agency's affidavits. See Gardels v. CIA, 689 F.2d 1100, 1105 (D.C. Cir. 1982); see also PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 250 (D.C. Cir. 1993)("[A]n affidavit that contains merely a 'categorical description of redacted material coupled with a categorical indication of anticipated consequences of disclosure is clearly inadequate.'").

### III.   SUMMARY JUDGMENT IS NOT CURRENTLY WARRANTED REGARDING THE ADEQUACY OF CIA'S SEARCHES

#### A.  Part 1 Of The FOIA Request

"[A]n agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990). A search must be conducted in good faith using methods that are likely to produce the information requested. See Campbell v. Dep't of Justice,

164 F.3d 20, 27 (D.C. Cir. 1998). "While there is no requirement that an agency search every record system, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." Jefferson v. Dep't of Justice, 168 F. App'x 448, 450 (D.C. Cir. 2005)(internal quotation and alteration omitted), quoting Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Agency affidavits, for their part, must set forth search terms and the type of searches performed. Oglesby, 920 F.2d at 68.

The information outlined in the Blaine Declaration is simply insufficient to demonstrate that CIA complied with its obligations under the FOIA with respect to the Assessment.

The Blaine Declaration states that CIA consulted with a senior official in the office responsible for examining AHIs, and that based on that consultation alone CIA concluded there was no single document comprising the Assessment. See Blaine Decl. at ¶14. Furthermore, the Blaine Declaration contends that it was able to locate three individual records comprising "interim findings" by consulting with "officials in the office with knowledge of and access to the records maintained by the office". Id. This sort of abstract and vague depiction of CIA's efforts to locate responsive records does not hold up to scrutiny.

The CIA has not provided Plaintiffs (to say nothing of this Court) with even a semblance of information regarding the methodology or criteria by which these searches were conducted. Even assuming *arguendo* that there was only one office reasonably likely to maintain responsive records, and similarly assuming *arguendo* that this single senior CIA official was the proper person to conclude there was no single Assessment

document, the Blaine Declaration does not identify *how* the searches were ultimately

conducted. How did CIA officials decide where to search within the office for responsive

records? Were classified and unclassified databases, shared drives and e-mail accounts

searched? Were hard copy files searched? If searches were done electronically, what

keywords were used? The Blaine Declaration provides none of this information.[3]

See Judicial Watch, Inc. v. Dep't of Homeland Sec., 857 F. Supp. 2d 129, 140-141

(D.D.C. 2012)(relying upon Oglesby, finding agency affidavits insufficient specifically

due to omission of, among other things, particular search terms relied upon in conducting

the searches)

  These categorical deficiencies are simply too much and raise clear and genuine issue

of material fact in dispute regarding the adequacy of CIA's searches for a copy of the

Assessment. This Court would respectfully be more than warranted to deny summary

judgment at this time with respect to Part 1 of the Plaintiffs' FOIA request.

### B.  Parts 2 And 3 Of The FOIA Request

  The CIA has declined to conduct actual searches for records responsive to parts 2 and

3 of the Plaintiffs' FOIA request, arguing that while it acknowledges the existence of

responsive records it must issue a "no number, no list" response in reliance upon

Exemptions 1 and 3. See Blaine Decl. at ¶¶18-21; see also id. at ¶14 n.1 ("…[The CIA

has not otherwise conducted a search."). The CIA contends that it complied with its

obligations under FOIA for purposes of issuing a "no number, no list" response.

See CIA's Memo at 16-19.

---

[3] In fact, the undersigned counsel represent nearly two dozen federal AHI victims from
multiple agencies to include CIA and are aware of multiple offices, such as the Office of
the Director, Office of General Counsel and Inspector General, to name just three, that
may – and perhaps would – likely possess responsive records.

The propriety of CIA's actions here are not as clear cut as it likes to suggest. There is a limited amount of case law surrounding the use of a "no number, no list" response in comparison to the more commonly known "Glomar" response. The one time the D.C. Circuit addressed the issue was in <u>ACLU v. CIA</u>, 710 F.3d 422 (D.C. Cir. 2013) ("ACLU I"), in which the panel (in dicta) found a "no number, no list" response to be a form of "radically minimalist" <u>Vaughn</u> Index that would only be justified in unusual circumstances and through a particularly persuasive affidavit. <u>Id</u>. at 433. <u>See also</u> <u>id</u>. at 434 (noting that "no number, no list" response might be proper for one subset of responsive records but not remainder); <u>Zynovieva v. Dep't of State</u>, 2021 U.S. Dist. LEXIS 146798, *11 (D.D.C. Aug. 5, 2021)("[T]he D.C. Circuit in [<u>ACLU I</u>] did not approve the use of a "no number, no list" response but rather remanded for the District Court to consider the question in the first instance). When <u>ACLU I</u> was remanded, the District Court found as sufficient a "distinctly modified <u>Vaughn</u> Index" that outlined the results of CIA's search and addressed the types of requested records that were located, as well as information contained in an *ex parte* and *in camera* classified declaration from CIA. <u>See</u> <u>ACLU v. CIA</u>, 109 F. Supp. 3d 220, 234 (D.D.C. 2015)("ACLU II"). This is vastly different from what CIA has presented thus far in this case and simply does not meet the high threshold that has been insinuated by the D.C. Circuit.

In fact, the D.C. Circuit did not have occasion in <u>ACLU I</u> to consider whether an agency could simply decline, as CIA has done here, to conduct a search when issuing a "no number, no list" response, and the District Court similarly did not address the issue on remand because CIA actually *did* conduct a search for responsive records. <u>See</u> <u>ACLU</u>

II, 109 F. Supp. 3d at 231. The undersigned are not aware of any D.C. Circuit case that

permits CIA to do what it is attempting which is why CIA does not cite to one.

The undersigned are only aware of two district court cases within our Circuit in which

a "no number, no list" response was considered in the years following the D.C. Circuit's

ruling in ACLU I. In both cases the agency in question still conducted an actual search

for records first.[4] See Zynovieva, 2021 U.S. Dist. LEXIS 146798 at *3, *9 (searches

conducted for visa records); Reporters Comm. for Freedom of the Press v. FBI, 548 F.

Supp. 3d 185, 191 (D.D.C. 2021)(searches conducted for records regarding FBI

impersonation tactics).[5]

Quite simply, there is no support in existing case law – binding or otherwise – for the

proposition that CIA can simply decline to conduct its search for records, even if it

---

[4] The CIA cites to The James Madison Project v. Dep't of Justice, 208 F. Supp. 3d 265
(D.D.C. 2016), as a third potential case. See CIA's Memo at 18. However, undersigned
counsel, who were also the counsels of record in that matter, respectfully dispute CIA's
characterization of what transpired. Although it was actually the contention of the
Plaintiff that the Government in The James Madison Project had effectively sought to
issue a "no number, no list" response, the Honorable Rosemary M. Collyer concluded
otherwise. See id., 208 F. Supp. 3d at 286-87 (rejecting Plaintiff's arguments and
distinguishing Government's descriptions from "no number, no list" response).

[5] The CIA cites to commentary by the Seventh Circuit in Bassiouni v. CIA, 392 F.3d 244,
246-47 (7th Cir. 2004), as support for the idea that it does not need to conduct a search if
issuing a "no number, no list" response. See CIA's Memo at 9. That issue, however, was
never presented to the Seventh Circuit nor did it rule on that question. Even to the extent
Bassiouni stands for the proposition that the Seventh Circuit believes there is no
functional distinction between a "Glomar" and a "no number, no list" response,
see Bassiouni, 392 F.3d at 246-47, the courts within this Circuit do not appear to have
adhered to that view. See Prop. Of People v. Dep't of Justice, 405 F. Supp. 3d 99, 118
(D.D.C. 2019)(finding that if Glomar response is not appropriate, agency must submit
some form of Vaughn Index and outlining multiple criteria for format of filing); Elec.
Frontier Found. v. Dep't of Justice, 384 F. Supp. 3d 1, 12 (D.D.C. 2019)(finding
"Glomar" response and "no number, no list" response to be conceptually different).
See also Open Soc'y Justice Initiative v. CIA, 505 F. Supp. 3d 234, 248-49 (S.D.N.Y.
2020)(indicating searches were conducted prior to issuance of "no number, no list"
response).

ultimately seeks to issue a "no number, no list" response. Summary judgment, therefore, is respectfully not warranted for Part 2 or Part 3 of the FOIA request. As a result, CIA should be ordered to conduct an adequate search for responsive records.

### III. CIA HAS NOT SUFFICIENTLY DEMONSTRATED ITS REDACTIONS AND WITHHOLDINGS ARE APPROPRIATE UNDER EXEMPTION ONE OR EXEMPTION THREE

As with any other exemption, CIA bears the burden of justifying its invocation of Exemptions One and Three. See Campbell v. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998). See also Coldiron v. Dep't of Justice, 310 F. Supp. 2d 44, 50 (D.D.C. 2004) (permitting challenges to agency affidavits as "insufficient for lack of detail/specificity").

In terms of Exemption One, the Plaintiffs acknowledge that agency declarations invoking national security are generally afforded "substantial weight" and courts have stated that they will not second-guess an agency's "facially reasonable concerns" regarding the harm disclosure may cause to national security. See Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999). But that sentiment is not a magic wand for the Executive Branch to wave to excuse judicial review. Congress specifically modified FOIA to clarify its intent that "courts act as an independent check on challenged classification decisions." Goldberg v. U.S. Dep't of State, 818 F.2d 71, 76 (D.C. Cir. 1987). Courts are not to relinquish "their independent responsibility." Id. at 77. Nor should courts "give an agency carte blanche to redact or otherwise withhold responsive information without a valid and thorough affidavit ...." Lawyers Committee for Human Rights et al v. INS, 721 F. Supp. 552, 561 (S.D.N.Y. 1989).

This Court must first evaluate whether CIA has demonstrated a logical connection between the "documents at issue and the general standards that govern the national

security exemption." <u>Coldiron</u>, 310 F. Supp. 2d at 53, <u>citing</u> <u>Campbell</u>, 164 F.3d at 30.

CIA cannot simply engage in a "cut and paste" job for its declaration, but instead must

provide – to the extent that it does not frustrate the very national security concerns at

issue of course – sufficient detail to demonstrate a "facially reasonable concern".

<u>Coldiron</u>, 310 F. Supp. 2d at 54. <u>See also</u> <u>Campbell</u>, 164 F.3d at 31 (while it is true

"requiring too much detail in a declaration could defeat the point of the exemption, in

most cases the agency should not have difficulty describing the context and nature of the

withheld information without revealing its substance").

The same premise holds true for invoking Exemption Three withholding statutes,

such as CIA has done here with respect to the National Security Act of 1948 and the

Central Intelligence Agency Act of 1949. <u>See</u> CIA's Memo at 15-16. In order to justify

summary judgment, the burden is on CIA to demonstrate that the redacted and/or

withheld information falls within the scope of one of the two identified statutes.

<u>See</u> <u>DiBacco v. Dep't of the  Army</u>, 926 F. 3d 827, 835 (D.C. Cir. 2019); <u>Larson v. Dep't</u>

<u>of State</u>, 565 F.3d 857, 865 (D.C. Cir. 2009). Respectfully, it has not done so.

**A.  Part 1 Of The FOIA Request**

In response to Part 1 of Plaintiffs' FOIA request, CIA released two records in part and

withheld one in full. <u>See</u> Blaine Decl. at ¶12. The Plaintiffs request this Court conduct an

*in camera* review of these three records. <u>See</u> <u>ACLU v. Dep't of Defense</u>, 628 F.3d 612,

626 (D.C. Cir. 2011)

The Blaine Declaration is woefully deficient with respect to its explanations for the

five-page document that was withheld in full. The Blaine Declaration provides barebones

and boilerplate language devoid of any context or specificity when addressing this third

document. See Blaine Decl. at ¶17 (referring generically to protection of intelligence sources and methods concerning AHIs). Even to the extent the Blaine Declaration does slightly better with respect to the two documents released in part, see id. at ¶¶15-16, the minimalist amount of detail is still not sufficient to demonstrate a "facially reasonable concern".

Supplemental declarations, including if necessary classified declarations submitted *in camera* and *ex parte*, should be required before this Court can respectfully render a determination on the appropriateness of the withholding.

### B.  Parts 2 And 3 Of The FOIA Request

The CIA, of course, has not provided the Plaintiffs or this Court with any context on how many records it is withholding in full with respect to Parts 2 and 3 of the FOIA request. Instead, the CIA is relying upon a "no number, no list" response and citing to FOIA Exemptions 1 and 3. CIA's Memo at ¶18.

As noted earlier, supra at 11, there are only two known cases within this Circuit since ACLU I in which the District Court had occasion to directly adjudicate the sufficiency of an agency's declaration justifying use of a "no number, no list" response. In those two cases, the courts issued differing opinions on the sufficiency of the agency descriptions warranting a "no number, no list" response. See Reporters Comm. for Freedom of the Press, 548 F. Supp. 3d at 198, 202 (finding agency explanations sufficient based in part on information provided *in camera* and *ex parte*); compare with Zynovieva, 2021 U.S. Dist. LEXIS 146798 at *19-*20 (rejecting agency declaration as insufficient to warrant concealing number of withheld visa records in light of past agency disclosures of this type of information in Vaughn indices, notwithstanding change in agency policy).

14

The CIA did not file a classified declaration with this Court. It is relying solely upon the unclassified Blaine Declaration, and it does so to its detriment here. The Blaine Declaration relies largely upon broad and vague references to the idea that listing even the number and types of responsive records would expose the volume of CIA resources dedicated to AHIs or make public the agency's "factual, medical and scientific intelligence collection capabilities". See Blaine Decl. at ¶¶30-32. There is nothing remotely approaching the kind of detail required from the agency to justify the granting of summary judgment. How are the Plaintiffs, to say nothing of this Court, supposed to assess the claim that the mere disclosure of the details of a normal Vaughn Index – not actually the contents of the records – would implicate Exemptions One or Three? This simply is not the type of "particularly persuasive affidavit" the D.C. Circuit had in mind in ACLU I.

If the CIA wishes to invoke a "no number, no list" response, it will have to supplement the record with additional declarations. Of course, the Plaintiffs have no desire for *properly* classified information to be exposed and therefore request, at an absolute minimum, that this Court require the submission of an *in camera* and *ex parte* classified declaration by CIA for this Court to consider, preferably along with a public version that can be addressed by the Plaintiffs in subsequent filings.

## V.  CIA HAS FAILED TO DEMONSTRATE THAT ALL SEGREGABLE PORTIONS OF THE RESPONSIVE RECORDS HAVE BEEN RELEASED

In the D.C. Circuit it is reversible error for a district court not to make a finding of segregability. See e.g., Kimberlin v. Dep't of Justice, 139 F.3d 944, 950 (D.C. Cir. 1998). Notwithstanding the different Exemptions that might be asserted, nonexempt portions of all records must be released. See 5 U.S.C. § 552(b)(1998)(sentence immediately

following exemptions). Here, CIA has done nothing to present any credible evidence that there are no further segregable portions of the released records. All it claims is that it has determined no further information can be segregated. <u>See</u> Blaine Decl. at ¶¶40-41.

Respectfully, this Court should similarly reject such an assertion as unacceptable and contrary to law. <u>See e.g.,</u> <u>Davin v. Dep't of Justice</u>, 60 F.3d 1043, 1052 (3d Cir. 1995) (rejecting conclusory representation on segregation when declaration failed to describe process by which segregability determinations were made and provided no "factual recitation of why certain materials are not reasonably segregable"); <u>Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State</u>, 818 F. Supp. 1291, 1300 (N.D. Cal. 1992)("boilerplate" statement that "no segregation of non-exempt, meaningful information can be made for disclosure" deemed "entirely insufficient").

Therefore, CIA's request for summary judgment is premature and must respectfully be denied. <u>See</u> <u>Voinche v. FBI</u>, 46 F.Supp.2d 26, 33 (D.D.C. 1999)(refusing to grant summary judgment because agency's blanket segregability statement was inadequate).

## **CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Summary Judgment should be denied in part and further proceedings ordered.

Date: January 12, 2023

Respectfully submitted,

*s/Bradley P. Moss*
_____
Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 498-0011
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for the Plaintiffs
