# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| THE JAMES MADISON PROJECT, | ) | |
|  | ) | |
| and | ) | |
|  | ) | |
| BRIAN J. KAREM, | ) | |
|  | ) | Civil No.  22-cv-321-CJN |
| v. | ) | |
|  | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
|  | ) | |
|  | ) | |
| Defendant. | ) | |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.     The CIA's Searches For The Requested Records Were Adequate. .................................... 2

       A.     Part 1 Of The FOIA Request ........................................................................ 3

       B.     Parts 2 And 3 Of The FOIA Request ............................................................. 6

II.    The CIA Properly Withheld Requested Records, As Well As Information About
       Their Volume And Nature, Pursuant to FOIA Exemptions 1 and 3. ............................. 8

       A.     Part 1 Of The FOIA Request ........................................................................ 8

       B.     Parts 2 And 3 Of The FOIA Request. ........................................................... 12

III.   The CIA Properly Released All Reasonably Segregable Information From The
       Three Intelligence Products Responsive To Part 1 Of The Request. ........................... 14

CONCLUSION ................................................................................................................... 16

i

# TABLE OF AUTHORITIES

## CASES

*Am. Civil Liberties Union v. U.S. Dep't of Defense,*
  628 F.3d 612 (D.C. Cir. 2011) .......................................................................... 11, 13

*Amnesty Int'l USA v. CIA,*
  728 F. Supp. 2d 479 (S.D.N.Y. 2010) ................................................................... 4, 6

*Bassiouni v. CIA,*
  No. 02-cv-4049, 2004 WL 1125919 (N.D. Ill. Mar. 31, 2004), *aff'd,*
  392 F.3d 244 (7th Cir. 2004) ...................................................................................... 7

*Bay Area Lawyers Alliance for Nuclear Arms Control v. Department of State,*
  818 F. Supp. 1291 (N.D. Cal. 1992) ................................................................... 15, 16

*Berard v. Fed. Bureau of Prisons,*
  209 F. Supp. 3d 167 (D.D.C. 2016) ............................................................................ 6

*Burnett v. U.S. Drug Enf't Admin.,*
  No. 1:19-cv-870, 2021 WL 1209142 (D.D.C. Mar. 31, 2021), *aff'd sub nom.,*
  *Burnett v. Dep't of Just.,* 2021 WL 6102268 (D.C. Cir. Dec. 3, 2021) ................... 10

*Campbell v. Dep't of Justice,*
  164 F.3d 20 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999) .................................... 3, 5

*CIA v. Sims,*
  471 U.S. 159 (1985) .................................................................................................. 10

*Coldiron v. U.S. Dep't of Justice,*
  310 F. Supp. 2d 44 (D.D.C. 2004) .............................................................................. 8

*Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y,*
  241 F. Supp. 3d 14 (D.D.C. 2017) .............................................................................. 5

*Ctr. for Med. Progress v. U.S. Dep't of Health & Hum. Servs.,*
  No. 21-cv-642, 2022 WL 4016617 (D.D.C. Sept. 3, 2022), *reconsideration denied,*
  2022 WL 17976633 (D.D.C. Nov. 16, 2022) ........................................................... 15

*Davin v. U.S. Department of Justice,*
  60 F.3d 1043 (3d Cir. 1995)...................................................................................... 16

*Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency,*
  678 F.3d 926 (D.C. Cir. 2012) ............................................................................... 2, 7

*Freeman v. FBI,*
  No. 18-cv-2769, 2022 WL 4365734 (D.D.C. Sept. 21, 2022)................................. 16

*Frugone v. CIA*,
    169 F.3d 772 (D.C. Cir. 1999) ............................................................................ 8, 9

*Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*,
    608 F.2d 1381 (D.C. Cir. 1979) ............................................................................ 11

*James Madison Project v. Department of Justice*,
    208 F. Supp. 3d 265 (D.D.C. 2016) .................................................................. 13, 14

*Johnson v. Exec. Off. for U.S. Att'ys*,
    310 F.3d 771 (D.C. Cir. 2002) ............................................................................. 15

*Juarez v. Dep't of Justice*,
    518 F.3d 54 (D.C. Cir. 2008) ............................................................................... 14

*Judicial Watch, Inc. v. U.S. Dep't of Defense*,
    857 F. Supp. 2d 44 (D.D.C. 2012), *aff'd*, 757 F.3d 937 (D.C. Cir. 2013) ................ 6

*Judicial Watch, Inc. v. U.S. Dep't of Justice*,
    --- F. Supp. 3d ---, 2022 WL 2915605 & n.7 (D.D.C. July 25, 2022) ..................... 11

*Kimberlin v. Dep't of Justice*,
    139 F.3d 944 (D.C. Cir. 1998) ............................................................................. 14

*Larson v. Dep't of State*,
    565 F.3d 857 (D.C. Cir. 2009) ................................................................... 10, 11, 13

*Loving v. Dep't of Def.*,
    550 F.3d 32 (D.C. Cir. 2008) ............................................................................... 15

*Meeropol v. Meese*,
    790 F.2d 942 (D.C. Cir. 1986) ............................................................................... 4

*Mobley v. CIA*,
    806 F.3d 568 (D.C. Cir. 2015) ............................................................................. 11

*People for the Ethical Treatment of Animals v. Nat'l Institutes of Health*,
    745 F.3d 535 (D.C. Cir. 2014) ........................................................................... 7, 14

*Reps. Comm. for Freedom of the Press v. FBI*,
    548 F. Supp. 3d 185 (D.D.C. 2021) ...................................................................... 7, 13

*Rosenberg v. U.S. Dep't of Defense*,
    67 F. Supp. 3d 219 (D.D.C. 2014) .......................................................................... 6

*SafeCard Servs. Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ...................................................................... 4, 5, 6

*Sussman v. U.S. Marshals Serv.*,
　494 F.3d 1106 (D.C. Cir. 2007) ............................................................................. 14

*Truitt v. Dep't of State*,
　897 F.2d 540 (D.C. Cir. 1990) ............................................................................... 4

*Voinche v. Federal Bureau of Investigation*,
　46 F. Supp. 2d 26 (D.D.C. 1999) ........................................................................... 16

*Weisberg v. U.S. Dep't of Justice*,
　705 F.2d 1344 (D.C. Cir. 1983) ............................................................................. 4

*Zynovieva v. U.S. Dep't of State*,
　No. 19-cv-3445, 2021 WL 3472628 (D.D.C. Aug. 5, 2021) ............................... 7, 13

**STATUTES**

5 U.S.C. § 552 .......................................................................................................... 1, 14

50 U.S.C. § 3024 ..................................................................................................... 10

**INTRODUCTION**

In this Freedom of Information Act ("FOIA") case, Defendant, the Central Intelligence Agency ("CIA"), is entitled to summary judgment because it conducted a reasonable search for the requested records and adequately explained why the intelligence information on anomalous health incidents ("AHIs") sought by Plaintiffs, as well as information about the volume and nature of the CIA's findings on AHIs, is exempt from disclosure under 5 U.S.C. § 552(b)(1) ("Exemption 1") and (b)(3) ("Exemption 3").

Plaintiffs' opposition brief fails to sustain any other conclusion. Plaintiffs' stock response to Defendants' motion asserts that the CIA's declaration, submitted by Ms. Vanna Blaine of the CIA's Litigation Information Review Office, is not sufficiently detailed. *See* Mem. in Opp'n to Def.'s Mot. for Summ. J. at 8–9, 13–16, ECF No. 16 ("Pls.' Opp'n"). But Ms. Blaine's declaration belies this assertion. The declaration explains, in as much detail as can be provided on the public record, (1) that the CIA searched for the "Assessment" sought by Part 1 of Plaintiffs' request—and found three documents that encapsulate its "interim findings" on AHIs from January 19-20, 2022—by consulting with knowledgeable officials who work in the CIA office charged with examining AHIs; (2) that the bulk of the CIA's interim findings, as well as information about the volume and nature of the underlying intelligence information, is properly classified under Executive Order 13526 and exempt from disclosure under the National Security Act of 1947; and (3) that the CIA conducted a line-by-line review of the three documents responsive to Part 1 of Plaintiffs' FOIA request and determined that all reasonably segregable, non-exempt information has been released. Ms. Blaine's uncontroverted statements are sufficiently detailed to permit this Court to award summary judgment to Defendant without *ex parte*, *in camera* review of classified information.

1

Plaintiffs also contend that the CIA should be ordered to conduct a further search for records responsive to Parts 2 and 3 of their FOIA request. *See* Pls.' Opp'n at 9–12. As Plaintiffs observe, no court has squarely addressed whether an agency that is justified in issuing a "no number, no list" response—as the CIA issued here in response to Parts 2 and 3 of Plaintiffs' request—must nevertheless conduct a thorough search for responsive records. *See id.* at 10–11. However, in the closely related *Glomar* context, the D.C. Circuit has held that no search is required: conducting a search "would be a meaningless—not to mention costly—exercise" because the search results would be fully exempt from disclosure. *Elec. Priv. Info. Ctr. v. Nat'l Sec. Agency*, 678 F.3d 926, 934 (D.C. Cir. 2012). Plaintiffs fail to respond to Defendant's argument that a "no number, no list" response is analogous to a *Glomar* assertion for these purposes. *Compare* Def.'s Mem. of P. & A. in Supp. of Its Mot. for Summ. J. at 8–9, ECF No. 14 ("Def.'s Mem."), *with* Pls.' Opp'n at 10–12. Accordingly, the Court should hold that the CIA's search efforts were adequate and should grant Defendant's motion for summary judgment.

## ARGUMENT

### I.    The CIA's Searches For The Requested Records Were Adequate.

The CIA searched for records responsive to Part 1 of Plaintiffs' FOIA request by consulting with knowledgeable officials in the most relevant CIA office. This approach was not only reasonable but also successful: the CIA determined that there was no single document meeting the precise description in Plaintiffs' request, and the CIA then identified three documents that encapsulate the "interim findings" on AHIs that Part 1 of the request, generously construed, was seeking. Through similar consultations with knowledgeable officials, the CIA determined that it possesses at least one record responsive to Parts 2 and 3 of Plaintiffs' request. Because the CIA justifiably provided a "no number, no list" response to these parts of the request, no further search was needed.

2

A.      Part 1 Of The FOIA Request

There is no genuine factual dispute about how the CIA searched for records responsive to Part 1 of Plaintiffs' FOIA request.  Part 1 not only sought a single document; it sought a single high-profile document.  Specifically, Part 1 of the request sought "the Assessment," which the request describes as a report "assert[ing] [that] the majority of 1,000 cases of [AHIs] can be explained by other causes rather than a sustained global campaign by a foreign power."  FOIA Request, at 1-2, Ex. A to ECF No. 14-2 ("Request").  The CIA searched for "[a] copy of the Assessment," *id.* at 2, by consulting with a senior official in the CIA office charged with examining AHIs.  Decl. of Vanna Blaine, Info. Review Officer, Litig. Info. Review Off. ¶ 14, ECF No. 14-2 ("Blaine Decl.").  This official is knowledgeable about the agency's investigation of AHIs and has access to the office's records.  *See* Def.'s Statement of Material Facts as to Which There Is No Genuine Issue ¶ 32, ECF No. 14-1 ("Def.'s SOF"); *accord* Resp. to Def.'s Statement of Material Facts as to Which There Is No Genuine Issue ¶ 32, ECF No. 16-1 ("Pls.' SOF Resp.").  Based on its consultation with this official, "the CIA determined that there was no singular 'Assessment' as described in Plaintiff's FOIA request."  Blaine Decl. ¶ 14.  Once that became clear, the CIA construed Part 1 as seeking "a document that encapsulates the CIA's interim findings" referenced in the CIA Director's public statement of January 19, 2022, *id.*—a construction to which Plaintiffs have not objected.  Upon further consultation with knowledgeable officials in the same office, the CIA identified and located three documents that "encapsulate the interim findings."  *Id.*

There also is no dispute about the applicable legal standard.  The parties agree that a FOIA search "must be conducted in good faith using methods that are likely to produce the information requested."  Pls.' Opp'n at 7–8 (citing *Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999)); *accord* Def.'s Mem. at 6–7.  Here, as there are no

allegations of bad faith, the sole question is "whether the search was reasonably calculated to discover the requested document[]." *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991). The D.C. Circuit has repeatedly explained that the adequacy of an agency's search for responsive records "is measured by the reasonableness of the effort *in light of the specific request*." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) (emphasis added); *see also Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) ("The adequacy of an agency's search is measured by a 'standard of reasonableness', and is 'dependent upon the circumstances of the case.'") (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).

The CIA's search for the "Assessment" was clearly reasonable under the circumstances. An obvious and efficient way to locate "a copy" of a high-profile assessment on AHIs is simply to ask a knowledgeable senior official in the office charged with examining AHIs. *See, e.g.*, *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 499–500 (S.D.N.Y. 2010) (upholding adequacy of search in which "the person most knowledgeable regarding [the subject of the request] inquire[d] into the existence of [the records]"). Tellingly, Plaintiffs do not even attempt to argue that the CIA's consultations with knowledgeable officials were not "reasonably calculated to discover the requested document[]," *SafeCard Servs.*, 926 F.2d at 1201. What is more, the CIA's search *did* produce the "interim findings" on AHIs: one classified report, dated January 20, 2022, entitled "Worldwide: Anomalous Health Incidents Probably Not Global Campaign Against US Officials"; a second classified report, dated January 20, 2022, entitled "Examining Possible Natural and Environmental Causes of Worldwide Anomalous Health Incidents"; and a third classified document containing similar information. *See* Blaine Decl. ¶¶ 15–17. Plaintiffs do not dispute that these three documents are responsive to Part 1 of their request, nor do they

offer any reason to think there is some other "Assessment" of which knowledgeable officials from the relevant office are somehow unaware. *See SafeCard Servs.*, 926 F.2d at 1200 (agency affidavits "cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents'" (citation omitted)).

Plaintiffs err in suggesting that the CIA should have searched additional offices, *see* Pls.' Opp'n at 8, 9 n.3.  The CIA did not determine "that there was only one office reasonably likely to maintain" the interim findings on AHIs, as Plaintiffs suggest, *id.* at 8.  Instead, the CIA determined that any responsive information would likely be found in the CIA office tasked with examining AHIs (regardless of whether it also could be found elsewhere).  *See* Def.'s Mem. at 7 (citing Blaine Decl. ¶ 14).  This was plainly reasonable, given the nature of that office's work. While it is possible that additional copies of responsive records can be found in other CIA offices, *see* Pls.' Opp'n at 9 n.3, the CIA did not need to search those offices because the office tasked with examining AHIs has at least one copy of all responsive records, and "[the] FOIA does not require agencies to produce duplicate records."  *See, e.g.*, *Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 241 F. Supp. 3d 14, 22 (D.D.C. 2017) (collecting cases).

Plaintiffs also err in suggesting that the CIA must provide additional information about "*how* the searches were ultimately conducted," including whether "classified and unclassified databases, shared drives, and e-mail accounts [were] searched" and "what keywords were used," Pls.' Opp'n at 8–9.  The CIA did not need to search databases, shared drives, or emails using keywords because Part 1 sought a single "report" or "assessment" on AHIs.  *See Campbell*, 164 F.3d at 28 ("FOIA demands only a reasonable search tailored to the nature of a particular request.").  The CIA reasonably and correctly determined that officials in the CIA office charged with examining AHIs would be familiar with any such assessment, particularly in light of the

CIA Director's public statement of January 19, 2022 and the related media coverage.  *See* Request at 1–2 (referencing this media coverage); *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 857 F. Supp. 2d 44, 54 (D.D.C. 2012) (relevant officials are likely to know about discrete set of high-profile records), *aff'd*, 715 F.3d 937 (D.C. Cir. 2013).  Nor must the CIA "identify by name the individuals responsible for the search, [or] the exact method by which the files were searched."  *Rosenberg v. U.S. Dep't of Defense*, 67 F. Supp. 3d 219, 225 (D.D.C. 2014).

In sum, the CIA's consultation with knowledgeable officials in the relevant office "was reasonably calculated to discover" a copy of the document sought by Part 1 of Plaintiffs' request, *see SafeCard Servs.*, 926 F.2d at 1201; *Amnesty Int'l USA*, 728 F. Supp. 2d at 499–500.  Indeed, the search was successful: it determined that there is no single document meeting Plaintiffs' description, and it identified and located the "interim findings" on AHIs that Part 1 of Plaintiffs' request—generously construed—was seeking.  *See Berard v. Fed. Bureau of Prisons*, 209 F. Supp. 3d 167, 172 (D.D.C. 2016) (recognizing reasonableness of search for single document that "located the requested document").

B.    **Parts 2 And 3 Of The FOIA Request**

There is also no genuine factual dispute about how the CIA searched for records responsive to Parts 2 and 3 of Plaintiffs' FOIA request.  As with its search for records responsive to Part 1, the CIA consulted with a senior official in the CIA office charged with examining AHIs.  *See* Def.'s SOF ¶ 38; Pls.' SOF Resp. ¶ 38.  This official confirmed that the office is in possession of at least one responsive record.  *See* Def.'s SOF ¶ 39; Pls.' SOF Resp. ¶ 39.  In line with its "no number, no list" response, the CIA has not otherwise conducted a search.  Blaine Decl. ¶ 14 n.1.

The CIA's opening brief explained that where a "no number, no list" response is justified, requiring a search "'would be a meaningless—not to mention costly—exercise,' given that the

results of the search are fully exempt from disclosure." Def.'s Mem. at 9 (quoting *Elec. Priv. Info. Ctr.*, 678 F.3d at 934). Accordingly, the well-established rule that "the agency need not conduct any search for responsive documents" when a *Glomar* response is justified should also apply when a "no number, no list" response is justified. *See id.* at 8–9 (quoting *People for the Ethical Treatment of Animals v. Nat'l Institutes of Health*, 745 F.3d 535, 540 (D.C. Cir. 2014)).

Plaintiffs fail to engage with—much less refute—this straightforward reasoning. Instead, Plaintiffs observe that no court has yet addressed the question whether the *Glomar* rule applies in the "no number, no list" context. *See* Pls.' Opp'n at 10–11. There are only a handful of judicial decisions in FOIA cases involving a "no number, no list" response, and it appears that in those cases the agency either conducted a search prior to its decision to issue a "no number, no list response," *see Zynovieva v. U.S. Dep't of State*, No. 19-cv-3445, 2021 WL 3472628, at *7 (D.D.C. Aug. 5, 2021); *Reps. Comm. for Freedom of the Press v. FBI*, 548 F. Supp. 3d 185, 197–98 (D.D.C. 2021), or the plaintiff did not challenge the agency's decision not to conduct a search, *see Bassiouni v. CIA*, No. 02-cv-4049, 2004 WL 1125919, at *4–*5 (N.D. Ill. Mar. 31, 2004), *aff'd*, 392 F.3d 244 (7th Cir. 2004). None of these cases supports Plaintiffs' position that "[the] CIA should be ordered to conduct an adequate search for responsive records" even if its "no number, no list" response is justified, Pls.' Opp'n at 12. *Cf. Elec. Priv. Info. Ctr.*, 678 F.3d at 934 (cases in which agencies conducted searches "of [their] own volition prior to issuing a *Glomar* response" do not "hold—or even imply—that such a search . . . is *required*").

Plaintiffs offer no reason why the CIA should be ordered to conduct a "meaningless—not to mention costly," *id.*—search for records that it can neither release, even in part, nor catalogue on a traditional *Vaughn* index. The reasoning in the D.C. Circuit's *Glomar* cases equally applies

here, and this Court should therefore hold that the CIA's search for records responsive to Parts 2 and 3 of Plaintiffs' request was adequate in light of the agency's "no number, no list" response.

## II.    The CIA Properly Withheld Requested Records, As Well As Information About Their Volume And Nature, Pursuant to FOIA Exemptions 1 and 3.

Ms. Blaine has described the three documents responsive to Part 1 of Plaintiffs' FOIA request and explained why the withheld portions of these documents are subject to Exemption 1 (they are properly classified) and Exemption 3 (they relate to intelligence sources and methods). Ms. Blaine has also explained why the intelligence information sought by Parts 2 and 3 of Plaintiffs' request, as well as details about the volume and nature of that information, is subject to Exemptions 1 and 3. Because Ms. Blaine's explanations are reasonably detailed and logical, there is no need for the CIA to submit classified information for *ex parte*, *in camera* review.

### A.    Part 1 Of The FOIA Request

Plaintiffs do not dispute that FOIA Exemption 1 protects from disclosure materials that are properly classified under Executive Order 13526. *Compare* Def.'s Mem. at 10, *with* Pls.' Opp'n at 15 ("Plaintiffs have no desire for properly classified information to be exposed" (emphasis omitted)). Nor do they dispute that the documents responsive to Part 1 of their FOIA request satisfy three of the four requirements of Executive Order 13526. *Compare* Def.'s Mem. at 10–11, *with* Pls.' Opp'n at 12. The only disputed issue is whether Ms. Blaine has adequately explained her determination regarding the fourth requirement, *i.e.*, that the unauthorized disclosure of the withheld portions of these documents could reasonably be expected to result in damage to national security. *See* Pls.' Opp'n at 13–14. Plaintiffs concede, as they must, that "the court should not second-guess an agency's 'facially reasonable concerns' regarding the harm disclosure may cause to national security." *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp. 2d 44, 54 (D.D.C. 2004) (quoting *Frugone v. CIA,* 169 F.3d 772, 775 (D.C. Cir. 1999)); *accord*

Pls.' Opp'n at 12–13.  Plaintiffs nevertheless maintain that Ms. Blaine's declaration is "not sufficient to demonstrate a 'facially reasonable concern'" regarding the disclosure of the withheld portions of the three documents; they assert that her declaration contains only a "minimalist amount of detail" and provides "barebones and boilerplate language devoid of any context or specificity."  *Id.* at 13–14.

These arguments ignore the specific information and detail contained in Ms. Blaine's declaration.  Indeed, it appears to be Plaintiffs who are making boilerplate arguments, recycled from other briefs about agency declarations.  Ms. Blaine described the three documents' contents "to the greatest extent possible on the public record," Blaine Decl. ¶ 5; *see id.* ¶¶ 15–17, and it is undisputed that all three are "finished intelligence products on the topic of AHIs."  Def.'s SOF ¶ 42; *accord* Pls.' SOF Resp. ¶ 42.  Ms. Blaine further explained that releasing these intelligence products "would reveal the underlying protected intelligence itself," including "the specific information collected" and "the methods used" to collect it.  Blaine Decl. ¶¶ 27–28.  The predicted harm articulated in the declaration is also specific and tailored to the documents at issue: the CIA is concerned that such revelations could harm national security by allowing adversaries of the United States to "identify CIA sources, CIA officers, what the CIA knows or does not know about AHIs, [the] CIA's intelligence-gathering means and capabilities, or where the CIA expends its resources on AHIs or other intelligence interests."  *Id.* ¶ 29.  Plaintiffs entirely ignore Ms. Blaine's explanation of why disclosure of the withheld portions could reasonably be expected to result in damage to national security.  *See* Pls.' Opp'n at 13–14 (discussing paragraphs 15–17 of Ms. Blaine's declaration but ignoring paragraphs 25–29 and 33).  There should be no serious question that the CIA's concerns are "facially reasonable," *Frugone*, 169 F.3d at 775.

Plaintiffs' challenge to the withholding of these three documents under Exemption 3 fares no better. Plaintiffs do not (and cannot) dispute that the National Security Act of 1947 and the Central Intelligence Agency Act of 1949 are exempting statutes under Exemption 3. *Compare* Def.'s Mem. at 15 (citing *CIA v. Sims*, 471 U.S. 159, 167–68 (1985)), *with* Pls.' Opp'n at 13. Rather, they seem to question whether "the redacted and/or withheld information falls within the scope of one of the two identified statutes." Pls.' Opp'n at 13; *see also* Def.'s Mem. at 15 (describing the second prong of *Sims*). Under D.C. Circuit precedent, information falls within the scope of § 102A(i)(1) of the National Security Act of 1947, *see* 50 U.S.C. § 3024(i)(1), if it "relates to intelligence sources and methods." *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009).

Plaintiffs' lone argument regarding Exemption 3 is, again, that Ms. Blaine's declaration is not sufficiently detailed or specific. *See* Pls.' Opp'n at 13–14. Plaintiffs are again incorrect. As Ms. Blaine explained, the three documents at issue are "finished intelligence products" containing the CIA's "examin[ation] [of] possible natural and environmental causes of" AHIs and the CIA's bases for concluding that AHIs are "probably not [a] global campaign against US officials," Blaine Decl. ¶¶ 15–16, 26 (capitalization altered); *see id.* ¶ 17. Ms. Blaine further explained that "[t]he CIA's efforts to investigate AHIs constitute intelligence activities," *id.* ¶ 26, and the CIA is withholding "the specific information collected" through those efforts, including "the methods used" and "the scope of the information collected," to avoid "reveal[ing] the CIA's and the U.S. Government's intelligence capabilities and objectives," *id.* ¶ 28. These explanations "are reasonably detailed, logical, and plausible," *Burnett v. U.S. Drug Enf't Admin.*, No. 1:19-cv-870, 2021 WL 1209142, at *6 (D.D.C. Mar. 31, 2021) (Nichols, J.), *aff'd sub nom. Burnett v. Dep't of Just.*, 2021 WL 6102268 (D.C. Cir. Dec. 3, 2021). This Court should therefore reach

the unsurprising conclusion that Plaintiffs' request for "the CIA's intelligence assessment" on AHIs, *see* Request at 1–2, has generated records that "relate[] to intelligence sources and methods," *Larson*, 565 F.3d at 865.

There is no need for the Court to conduct an *ex parte*, *in camera* review of these three records. *Contra* Pls.' Opp'n at 13 (citing *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 626 (D.C. Cir. 2011)). The D.C. Circuit has repeatedly held that "[i]f the agency's affidavits provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith, then summary judgment is appropriate without *in camera* review of the documents." *Mobley v. CIA*, 806 F.3d 568, 588 (D.C. Cir. 2015) (quoting *Am. Civil Liberties Union*, 628 F.3d at 626). Indeed, "[*i*]n camera inspection is particularly a last resort in national security situations like this case—a court should not resort to it routinely on the theory that 'it can't hurt.'" *Am. Civil Liberties Union*, 628 F.3d at 626 (quoting *Larson*, 565 F.3d at 870). Here, Ms. Blaine has explained, in reasonable detail, why the three "finished intelligence products" responsive to Plaintiffs' request for an "intelligence assessment" are (1) properly classified; and (2) specifically protected from disclosure under § 102A(i)(1). *See* Def.'s Mem. at 10–16; *supra* pp. 8–10; Blaine Decl. ¶¶ 15–17, 23–29, 33–39. Accordingly, as the record contains no contradictory evidence or evidence of bad faith, "*in camera* review is neither necessary nor appropriate." *Am. Civil Liberties Union*, 628 F.3d at 626 (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)); *see also, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Justice*, --- F. Supp. 3d ---, 2022 WL 2915605, at *8 & n.7 (D.D.C. July 25, 2022) (Nichols, J.) (explaining that there are risks associated with *ex parte*, *in camera* review and "it should not be done simply as a matter of course").

## B.    Parts 2 And 3 Of The FOIA Request.

With respect to Parts 2 and 3 of Plaintiffs' request, the CIA issued a "no number, no list"
response.  *See* Blaine Decl. ¶¶ 19–20.  Plaintiffs do not dispute that an agency may properly
issue a "no number, no list" response if describing the volume and nature of the responsive
documents would disclose exempt information.  *Compare* Def.'s Mem. at 16–17, *with* Pls.'
Opp'n at 14.  The sole disputed issue is whether Ms. Blaine's declaration contains enough detail
to establish that the withheld descriptive information is covered by Exemption 1 and Exemption
3.  *See* Pls.' Opp'n at 14–15.

Plaintiffs again rely, erroneously, on a stock argument that Ms. Blaine's declaration is too
"broad and vague" to justify the CIA's withholdings.  Ms. Blaine explained—and Plaintiffs fail
to meaningfully dispute—that the records responsive to Parts 2 and 3 of Plaintiffs' request
constitute "intelligence information gathered or obtained by the CIA on AHIs," and that listing
those records on a traditional *Vaughn* index "would reveal intelligence sources and methods by
potentially identifying the total amount of information gathered or obtained by the CIA, and
when the CIA gathered or obtained information or expended intelligence-gathering resources to
do so."  Blaine Decl. ¶ 26; *see also id.* ¶ 30.  Ms. Blaine also explained why releasing details
about the volume and nature of the requested intelligence information "could reasonably be
expected to cause irreparable harm to national security," *id.* ¶ 32.  Specifically, those details
could "alert adversaries of the United States to the CIA's intelligence-collection capabilities or
priorities," and such adversaries could potentially exploit such details by comparing them
"against information already publicly available or in their possession."  *Id.* ¶ 31.  Further,
releasing such details about records containing "factual, medical[,] and/or scientific findings
made in the course of" the CIA's investigation of AHIs, Request at 2, "would inherently make
public the CIA's factual, medical, and scientific intelligence collection capabilities because those

findings would reflect the [CIA's] capabilities," and could also "provid[e] adversaries with insights into the CIA's intelligence collection focus."  Blaine Decl. ¶ 32.  Plaintiffs fail to engage with this straightforward explanation, which adequately establishes that the information that would appear on a traditional *Vaughn* index is both properly classified and "relate[d] to intelligence sources and methods," *Larson*, 565 F.3d at 865.

Plaintiffs also err in asserting that the Court should "require the submission of an *in camera* and *ex parte* classified declaration" before it determines whether the CIA's "no number, no list" response was justified.  *See* Pls.' Opp'n at 15.  Neither of the cases on which Plaintiffs rely—*Reporters Committee* and *Zynovieva*—supports their position.  In *Reporters Committee*, the FBI determined that it was necessary to submit a classified declaration and *Vaughn* index to support its "no number, no list" response to a FOIA request seeking records regarding FBI agents' impersonation of documentary filmmakers.  *See* 548 F. Supp. 3d at 191, 198–99.  But nothing in the opinion suggests that classified submissions are *necessary* in "no number, no list" cases.  As noted above, such submissions are "a last resort"; they are not necessary where, as here, the applicability of FOIA exemptions can be established through public declarations.  *See, e.g.*, *Am. Civil Liberties Union*, 628 F.3d at 626.  Indeed, there were no classified submissions in *Zynovieva*, nor did the court request such submissions.  *See* 2021 WL 3472628, at *6–*7 (concluding that the State Department had not adequately substantiated its reasons for withholding the volume and nature of certain visa records, given that it had released similar information in the past).  Nor are classified submissions mandatory in the *Glomar* context.  *See, e.g.*, *Larson*, 565 F.3d at 869–70.  Here—as in *James Madison Project v. Department of Justice*, 208 F. Supp. 3d 265 (D.D.C. 2016), which involved a FOIA request for legal analyses prepared

by Department of Justice attorneys[1]—the government has adequately explained, in an unclassified declaration, why information about the volume and nature of the requested records is exempt.  Accordingly, the Court should uphold the CIA's "no number, no list" response based on Ms. Blaine's unclassified declaration.

### III.    The CIA Properly Released All Reasonably Segregable Information From The Three Intelligence Products Responsive To Part 1 Of The Request.

With respect to segregability, Plaintiffs do not dispute the CIA's statement of the law: the FOIA requires production of "[a]ny reasonably segregable [non-exempt] portion of a record," 5 U.S.C. § 552(b); "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007); and a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated," *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008).  *Compare* Def.'s Mem. at 21, *with* Pls.' Mem. at 15–16.  Nor do Plaintiffs dispute that, with respect to Parts 2 and 3 of their FOIA request, the CIA did not need to engage in a segregability analysis so long as its "no number, no list" response was justified.  *Compare* Def.'s Mem. at 21 (citing *People for the Ethical Treatment of Animals*, 745 F.3d at 540), *with* Pls.' Opp'n at 15–16.  The parties further agree that this Court must make a finding of segregability with respect to the withheld portions of the three records responsive to Part 1 of Plaintiffs' FOIA request.  *See* Pls.' Opp'n at 15 (citing *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998).  The only disputed issue, once again, is

---

[1] Plaintiffs assert that *James Madison Project* was not a "no number, no list" case, *see* Pls.' Opp'n at 11 n.4, even though in that case Plaintiffs' counsel argued that the relevant portion of the Civil Division's response was the "equivalent of a 'no number, no list' response," 208 F. Supp. 3d at 285.  In any event, the case stands for the proposition that an unclassified declaration may adequately demonstrate that information about the volume and nature of requested records is exempt from disclosure under the FOIA.

whether Ms. Blaine's declaration is detailed enough to support the conclusion that all reasonably segregable, non-exempt information has been released. *See id.* at 16.

The Court should resolve this issue in the CIA's favor. Absent evidence of bad faith—which does not exist here—an agency may demonstrate compliance with its segregability obligations through a declaration that (1) describes each withheld document; and (2) states that the agency conducted a line-by-line review of each document and released all reasonably segregable material. *See, e.g.*, *Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008) (citing *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002)). That is precisely what the CIA has done here. *See* Blaine Decl. ¶¶ 15–17, 40. Ms. Blaine declared that the three documents at issue constitute "finished intelligence products on the topic of AHIs"; that they contain the CIA's "examin[ation] [of] possible natural and environmental causes of worldwide [AHIs]," and the CIA's assessment that AHIs are "probably not [a] global campaign against US officials," *id.* ¶¶ 15–16, 26 (capitalization altered), *see id.* ¶ 17; that the withheld portions are subject to Exemption 1 and Exemption 3, *see id.* ¶¶ 25–29, 33–39; and that "the CIA conducted a line-by-line review of each of these documents, and released all reasonably segregable, non-exempt information," *id.* ¶ 40. D.C. Circuit precedent requires nothing more. *See, e.g.*, *Loving*, 550 F.3d at 41; *see also Ctr. for Med. Progress v. U.S. Dep't of Health & Hum. Servs.*, No. 21-cv-642, 2022 WL 4016617, at *15–*16 (D.D.C. Sept. 3, 2022), *reconsideration denied*, 2022 WL 17976633 (D.D.C. Nov. 16, 2022).

The cases on which Plaintiffs rely are inapposite. In *Bay Area Lawyers Alliance for Nuclear Arms Control v. Department of State*, 818 F. Supp. 1291 (N.D. Cal. 1992), the government declarant "fail[ed] to discuss segregability," apart from a boilerplate assertion that "no segregation of non-exempt, meaningful information can be made for disclosure." *Id.* at

1300.  Likewise, in *Voinche v. Federal Bureau of Investigation*, 46 F. Supp. 2d 26 (D.D.C. 1999), the declarant's "only statement regarding the issue of segregability [was] that the withheld material 'is so intertwined with the protected material that segregation is not possible.'" *Id.* at 33 (citation omitted).  Similarly, in *Davin v. U.S. Department of Justice*, 60 F.3d 1043 (3d Cir. 1995), the FBI withheld thousands of pages of responsive records, and its only evidence on segregability was a statement that "[e]very effort has been made to provide the plaintiff with all reasonably segregable portions on [sic] the sampled material."  *Id.* at 1052 (citation omitted).

Here, by contrast, Ms. Blaine explained why it was necessary to withhold the bulk of the three finished intelligence products responsive to Part 1 of Plaintiffs' request, including not only "intelligence sources and methods" but also "classification and dissemination control markings" and "the names, official titles, Agency identification numbers, and telephone numbers of personnel employed by the CIA."  Blaine Decl. ¶ 15; *accord id.* ¶¶ 16–17.  She has further "describe[d] the process by which [CIA] determined that all reasonably segregable material of each of the withheld documents or portions of documents had been released," *Davin*, 60 F.3d at 1052, namely "a line-by-line review of each of these documents," Blaine Decl. ¶ 40.  Therefore, this Court should conclude that the CIA "has satisfied its segregability obligation under the FOIA."  *See, e.g.*, *Freeman v. FBI*, No. 18-cv-2769, 2022 WL 4365734, at *3 (D.D.C. Sept. 21, 2022) (finding similar explanation to be adequate).

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendant's opening memorandum, the Court should grant Defendant's motion for summary judgment.

Respectfully submitted this 2nd day of February, 2023,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Branch Director

*/s/ Joseph J. DeMott*
Joseph J. DeMott (Va. Bar No. 93981)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 305-5981
Joseph.DeMott@usdoj.gov

*Counsel for Defendant*

17