EXHIBIT "2"

S̶E̶C̶R̶E̶T̶/̶/̶N̶O̶F̶O̶R̶N̶

# The Office of the Inspector General of the Intelligence Community



# ICWPA Matter
### *March 15, 2023*

S̶E̶C̶R̶E̶T̶/̶/̶N̶O̶F̶O̶R̶N̶

SECRET//NOFORN

OFFICE OF THE INSPECTOR GENERAL OF THE INTELLIGENCE COMMUNITY
IC IG Counsel Team
ICWPA ~ Redacted Documents
March 15, 2023

| Table of Content | TAB |
|---|---|
| IC IG CPD ~ Hotline Intake Form - *IC Whistleblower Protection Act Disclosure Form* | 1 |
| Narrative of Urgent Concern, January 20, 2023 (redacted) | 2 |
| Email from Complainant, January 20, 2023 (redacted) | 3 |
| DARPA Memo, March 3, 2022 (redacted) | 4 |
| AHI CFT Update Briefing, 2022 (redacted) | 5 |
| (b)(1), (b)(3) | 6 |
| Submitter One Page & Accompanying Slides, July 14, 2022 | 7 |

SECRET//NOFORN



Office *of the* Inspector General
*of the* Intelligence Community

# IC Whistleblower Protection Act Disclosure Form

The Office of the Inspector General of the Intelligence Community (IC IG) Center for Protected Disclosures, through the IC IG Hotline Program, receives and processes whistleblower complaints, to include disclosures pursuant to the *Intelligence Community Whistleblower Protection Act* (ICWPA) 50 U.S.C. § 3033(k)(5) and 5 U.S.C. app. § 8H. The ICWPA is the lawful mechanism for Intelligence Community employees and contractors to disclose matters of "urgent concern" to the congressional intelligence committees, as defined by 50 U.S.C. § 3033(k)(5)(A). For additional information regarding ICWPA disclosure, please visit www.dni.gov/IC IG-Whistleblower.

## PART 1: BASIC ICWPA CRITERIA

(*) Required Information

1. **Current Status\*** See 50 U.S.C. § 3003(4) for the definition of "intelligence community"

   ☑ Employee of an element of the Intelligence Community.

   ☐ Employee assigned or detailed to an element of the Intelligence Community.

   ☐ Employee of a contractor to the Intelligence Community.

   ☐ Not an employee of the Intelligence Community or an employee of a contractor to the Intelligence Community. **STOP** and complete the IC IG Complaint Intake Form, or contact your former agency Office of Inspector General or the Office of Special Counsel for information on making a disclosure.

2. **Do you intend to report a matter of urgent concern complaint to Congress pursuant to 50 U.S.C. § 3033(k)(5)?**          ☑ Yes
                                                                                                                                                                                No

3. **Please identify the type of urgent concern you are reporting (check all that apply).**

   ☑ A serious or flagrant problem, abuse, violation of law or Executive Order, or deficiency relating to the funding, administration, or operations of an intelligence activity involving **classified** information, but does not include differences of opinion concerning public policy matters.

   ☑ A false statement to Congress, or a willful withholding from Congress, on an issue of material fact relating to the funding, administration, or operation of an intelligence activity.

   ☐ An action, including a personnel action described in section 2302(a)(2)(A) of Title 5, constituting reprisal or threat of reprisal prohibited under subsection (g)(3)(B) of this section in response to an employee reporting an urgent concern in accordance with this section.



UNCLASSIFIED

**ICWPA DISCLOSURE FORM**

## PART 2: YOUR INFORMATION

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

PURPOSE: To obtain sufficient information to inquire into matters presented and to provide appropriate responses, referrals, or inquiries, where deemed appropriate.

ROUTINE USES: Information is used for official purposes within the Office of the Director of National Intelligence (ODNI) and the IC IG; to answer complaints or respond to requests for assistance, advice, or information; by Members of Congress and other government agencies when determined by the IC IG to be in the best interest of the Intelligence Community.

(*) Required Information

1.  **Contact information of person making an "urgent concern" disclosure**

#### Contact Information

| | | |
|---|---|---|
| Prefix (Mr., Mrs., Ms., Rank, or Title) | (b)(3) (D)(6) | |
| First Name* | Middle Name | Last Name* |
| (b)(3), (b)(6), (b)(7)(c) | | |
| Mailing Address | (b)(3), (b)(6), (b)(7)(c) | |
| Telephone Number (Primary) | (b)(3), (b)(6) | |
| Telephone Number (Secondary) | (b)(3), (b)(6), (b)(7)(c) | |
| Fax Number | | |

Email Address(es)*

Primary.  (b)(3), (b)(6), (b)(7)(c)          Secondary:  (b)(3), (b)(6), (b)(7)(c)

| Your position | Title | Series | Grade |
|---|---|---|---|
| (b)(3), (b)(6) | | GS | ■ |

2. **Your Agency or Employer***
   Choose one, or enter your agency/employer if not listed.

☐ Other:

IC IG CPD – Hotline Intake Form

Rev. March 2022

23-cv-03457 (DF-2023-00136) 000004

UNCLASSIFIED

**ICWPA DISCLOSURE FORM**

3  **Do you have legal or other representation for this request?**   ☑ Yes (Please complete SECTION 3a)  ☐ No

**SECTION 3a – Legal Representation Information:**

| | |
|---|---|
| **Name of Representative\*** | (b)(6) |
| **Type of Representation** | ☑ Legal   ☐ Other |
| **Notice of Representation (Attached)** | ☐ Yes   ☐ No |
| **Mailing Address** | (b)(6) |
| **Telephone Number (Primary)** | (b)(6) |
| **Telephone Number (Secondary)** | |
| **Fax Number** | (b)(6) |
| **Email Address(es)\*** | |

Primary: (b)(6)                              Secondary:

## PART 3: DETAILS OF YOUR DISCLOSURE

1.  **Please describe the matter of urgent concern that you are disclosing, indicating how the specific alleged wrongdoing fits within the urgent concern type(s) that you checked in Part 1, item 3.** Be as specific as possible about dates, locations, and the identities and positions of all persons named. Your ability to succinctly identify the issue and supporting facts will assist in the processing of your disclosure. If necessary, please continue on a separate sheet of paper.

(U) This document and associated attachments serve to report a series of incidents and patterns of activity which I understand to constitute an "Urgent Concern" under relevant statutes. Specifically, this document relates to a pattern of activity including: a flagrant problem, gross mismanagement, and abuse of authority which will (a) result in the provision of false or misleading information to Congress; (b) withhold key information from Congress in relation to ongoing intelligence activities; (c) pose a safety and health risk to USG employees and potentially the public at large; and (d) harm the ability of the Intelligence Community (IC) to protect the national security interests of the United States. The report details (attached) comprise primarily activity associated with the Anomalous Health Incidents which I have encountered throughout 2022, but are the continuations of issues dating back to 2018 or earlier.

(U) This is based on my direct observations, conversations with witnesses including those with direct knowledge, and documentation I obtained through the course of my duties.

Attachments: ☐ Yes  ☐ No                          Total Pages Attached:

Rev. March 2021
23-cv-03457 (DF-2023-00136) 000005

UNCLASSIFIED

**ICWPA DISCLOSURE FORM**

2.  **Please identify the U.S. Government department or agency involved in your disclosure.**
    Choose one, or enter the department/agency if not listed.

    Select **Central Intelligence Agency**                    ▾

    ☐ Other:

3.  **Please identify the organizational unit of the department or agency involved in your disclosure.**
    ODNI , (b)(3) ███████████

## PART 4: OTHER ACTIONS YOU ARE TAKING

Please indicate if you have filed your complaint with any other entity, including other Inspector General Offices, and/or Members of Congress. If you have contacted other entities, clearly identify the agency, office, or command, and provide your understanding of the current status of your matter.

1a. **Have you reported this matter to any other organization(s)/agency(ies)?***          ☐ Yes  ☑ No

1b. **If yes, which organization(s)/agency(ies)?**

1c. **When did you report?**

1d. **What is the status of the complaint?**    ☐ Open    ☐ Under investigation    ☐ Closed    ☐ Unknown

*If you have received any responses from those entity(ies), please provide copies.*

## PART 5: ADDITIONAL DOCUMENT SUBMISSION

1.  **I am submitting additional documents***          ☑ Yes    ☐ No

2.  **I will submit supporting documents by:**    ☑ Email    ☐ Mail    ☐ Fax

    **Total pages attached:**    18+

IC IG CPD – Hotline Intake Form

Rev: March 2022
23-cv-03457 (DF-2023-00136) 000006

UNCLASSIFIED

**ICWPA DISCLOSURE FORM**

## PART 6: CERTIFICATION AND SIGNATURE

By signing below, you acknowledge the following:

[✔] *I understand that in handling my disclosure, the IC IG shall not disclose my identity without my consent, unless the IC IG determines that such disclosure is unavoidable during the course of the investigation or the disclosure is made to an official of the Department of Justice responsible for determining whether a prosecution should be undertaken.

[✔] *I understand that this form and any supporting documents transmitted to the IC IG will undergo classification review.

[✔] *I certify that all of the statements made in this complaint (including any additional documents or continuation pages) are true, complete, and correct, to the best of my knowledge and belief. I understand that, pursuant to 18 U.S.C. § 1001, knowingly and willfully making a false statement or concealing a material fact in any matter within the jurisdiction of the Executive Branch, including the IC IG, is a criminal offense.

(b)(3), (b)(6), (b)(7)(c)

_____
Signature

01/20/2023
_____
Date





(b)(3), (b)(7)(E)

## (U) Introduction

(U) This document serves to report a series of incidents and patterns of activity which I understand to constitute an "Urgent Concern" under relevant statutes. Specifically, this document relates to a pattern of activity including: a flagrant problem, gross mismanagement, and abuse of authority which will (a) result in the provision of false or misleading information to Congress; (b) withhold key information from Congress in relation to ongoing intelligence activities; (c) pose a safety and health risk to USG employees and potentially the public at large; and (d) harm the ability of the Intelligence Community (IC) to protect the national security interests of the United States.

(U) This document is based on my direct observations, conversations with witnesses including those with direct knowledge, and documentation I obtained through the course of business.

(U) Where possible, and in accordance with applicable policies and procedures, I request my counsel, (b)(6) be provided access to the classified portion of this complaint.

### (U) Timing

(U) This document is filed now due to recently obtained information which indicates the pattern of activity will soon result in the provision of incomplete, misleading and factually inaccurate information to Congress and policy makers within the Executive Branch, up to and including the President of the United States (POTUS).

### (U) Context

(U//FOUO) I am aware of the planned production of an Intelligence Community Assessment (ICA) which relies significantly on "negative" information (the absence of intelligence or evidence) to draw broad conclusions related to Anomalous Health Incidents (AHI). This ICA was to enter the formal coordination

```
Classified By (b)(3)
Derived From:
Declassify On
```

SECRET / /NOFORN



process on or around 12/16/22 with probable production and distribution or publication in January or February 2023.

(U//FOUO) This analysis appears to be intended to finalize the "interim" judgments of the January 2022 assessment under the imprimatur of a community product. These conclusions are allegedly based on the absence of evidence despite the purported comprehensive and exhaustive investigative and analytic efforts.

(U//FOUO) Based on the information presented in this document and the totality of information of which I am aware, I have reason to believe this assessment is designed to convey the appearance of IC consensus when no such consensus exists, and obfuscate that this is a continuation of the contested analytic line from 2022.

(U//FOUO) Absent changes, this ICA will likely incorporate the results of apparent active suppression of dissent through the abuse of authority, knowing exclusion and suppression of intelligence or information which contradicts the predetermined analytic line, the active suppression of witnesses, and actions which may constitute obstruction of justice and witness tampering as defined in federal statute (e.g. 18 USC 1512 (b) (1) and (2)(A)).

(U//FOUO) To manufacture the consensus, the CIA, with apparent assistance of elements of the DNI — notably the National Intelligence Council and the National Counterintelligence and Security Center — is engaged in the apparent suppression of dissenting information, intelligence, and/or evidence contradictory to the preferred analytic line.

(U//FOUO) As of the time of drafting this document, based on the totality of information I have either witnessed, experienced, or know of through documents, statements, or witnesses, I have reason to believe any assertions that there is no evidence of an actor or mechanism, or that investigation has been thorough, or that all leads have been exhausted, would be knowingly misleading. This activity would appear intended to provide false or misleading information to the IC, its leadership, and policy makers, to include Congressional oversight.

(b)(1), (b)(3)



### (U) Venue

(U//FOUO) I am filing this document with the IC IG rather than another entity as the following allegations and information (to include associated documents) pertain to programs and functions under the purview of the Director of National Intelligence. Specifically, this pertains to incomplete, false, and misleading information provided to Congress related to intelligence activities (specifically efforts to understand Anomalous Health Incidents, or AHIs) and the suppression of information which will inform the IC analytic process, to include ultimately an Intelligence Community Assessment on Anomalous Health Incidents (AHIs). This planned ICA will form the basis for how the IC may inform Congress on the topic (presuming this information is not withheld from Congress). Additionally, the negligence, abuse,



SECRET// ███████ /NOFORN ██

and bad behavior directly impacts the credibility and trust of the United States Intelligence Community as a whole and not just any one specific agency.

**(U) Organization**

(U) This document is divided into several parts based on specific allegations.

> Part 1: Manipulation of Intelligence and processes
>
> Part 2: Opposition to (b)(1), (b)(3), (b)(7)(E)
>
> Part 3: Other Abuses of Authority
>
> Part 4: Possible Intent of Activity

## **(U) Part 1:** Manipulation of Intelligence and processes

### *Summary*

(U//FOUO) The following summarizes allegations of intelligence abuses, some of which can be compared to "cooking the books" in financial and investment fraud through the concealment of material information. This risks undermining the credibility and trust between the IC, its customers, and the workforce at large. These abuses involve withholding contradictory information, using unethical bureaucratic maneuvering, direct and indirect threats of career consequences, actual adverse career impacts, and intimidation to punish or deter contrary reporting, operations, or analysis – to include implied or direct threats of adverse career impacts should witnesses or victims communicate with the FBI. This abuse is intended to control information flows, create a forced consensus, and marginalize dissenting analysis to foster the impression of Intelligence Community agreement on the topic of the Anomalous Health Incidents.

(U//FOUO) Some of the actions of the Central Intelligence Agency, and to an extent the National Intelligence Council (NIC) and ODNI, in their efforts to form and maintain a specific narrative internally and externally could arguably be characterized as conducting an information operation against the public, Congress, the Intelligence Community, and the defense community. Rather than seeking to inform on an issue, this effort appears intended to shape the perceptions and attitudes of the U.S. public, Congress, and other members of the Intelligence Community in order to end investigative efforts into Anomalous Health Incidents.

(U//FOUO) Specifically, I have seen or obtained specific documents known to the CIA which were withheld, one of which existed as far back as 2019, which contradict this assessment's underlying assumptions. I am also aware of multiple reports at various classification which contradict this assessment and which have not been addressed as part of the analytic process, but rather suppressed and concealed.

(U//FOUO) Additionally, if the information in the referenced documents (particularly the 2019 document detailed below) had been available to FBI investigators, the information would have impacted investigative courses of action and the search for specific evidence. A reasonable observer could conclude from the available evidence that the active withholding of this information significantly impaired investigations into AHI.

SECRET// ██████ NOFORN ██

SECRET / █████████ / NOFORN

(U//FOUO) I am aware of multiple witnesses (b)(3) ████████████████ ████████████ in relation to events they had witnessed or experienced.

(U//FOUO) I have obtained one email document which contains the specific guidance (b)(3) ████████ and characterizing any such contact (b)(3) ████████████ which could be punishable by adverse career impacts.

(U//FOUO) Additionally, I have (b)(3) ████████ information that one victim requested to speak to the FBI but was told their information had been passed to the FBI already. This victim remains unknown to the FBI and FBI investigators have none of the information related to this victim and their reported incident. Why this information was withheld from the FBI and the victim was informed it had been passed is unknown at this time. As the incident in question occurred in the United States, (b)(3) ████ not have the authority to conduct the necessary investigation to rule out the incident, and documentary evidence, to include national policy documents, demonstrate (b)(3) ████ full knowledge of the FBI's ongoing investigation into these incidents.

(U//FOUO (b)(3) ██████████████████████████████████████████ I have learned (b)(3) ████ victims and witnesses unwilling to make contact with the FBI formally or informally due to the fear of adverse career impacts. In several of these cases, the victims and witnesses directly cite both implied and overt threats of adverse career impacts and the continuation of adverse career and personnel actions. These threats and actions are directly linked to any contact between these witnesses and the FBI.

(U//FOUO) The effort to discourage (arguably coerce) witnesses and victims seems particularly focused on events inside the United States.

(U//FOUO) The withholding of these reports and active efforts to prevent witnesses from speaking with the FBI, (b)(3) ████ had full understanding of the scope and nature of the FBI investigations, could constitute obstruction of justice as defined in 18 USC 1519 or witness tampering under other federal statutes.

(U//FOUO) Based on the totality of the information available to me, I would conclude these abuses are not simple differences in analytic opinion, and are unrelated to sensitive operational activities, sources, or methods. Rather, the pattern of activity appears aimed at ending any further inquiry into the causal mechanism or attribution associated with AHI.

***(U) Details***

(U//FOUO) (b)(3) ██████████████████████████, I learned the National Intelligence Council (NIC), (b)(3) ██████████████ will produce an Intelligence Community Assessment or similar product by December 2022. This document will serve as the IC consensus assessment in regards to AHI.

(S//NF) Based on the information provided to me, the NIC has already determined the Key Judgment (KJ) that no evidence has emerged suggesting a foreign adversary was or is involved in AHI. This is the same KJ pushed forward by the (b)(3) ████ assessment (b)(3) ██████████████████████

---

1 (b)(3), (b)(6) ████████

SECRET / █████████ / NOFORN

TOP SECRET// ~~███████████~~ //NOFORN//

(b)(3) ████████ and this KJ will likewise rely on negative findings (absence of evidence as evidence of absence).

(U//FOUO) This conclusion is based on false and misleading information and assertions that investigators, analysts and collectors have thoroughly examined all incidents and found no evidence. I (b)(3) ████████ , documents, and indirect information obtained from colleagues which indicates this is a knowingly false statement.

(b)(1), (b)(3)



2 (b)(3), (b)(6)

SECRET// ~~███████████~~ //NOFORN//

SECRET// H ██████████ /NOFORN/ █████

(b)(1), (b)(3)
████████████████████████████████████████████████████

(U//FOUO) I currently have no reason to believe this information was known to the FBI at any time. ███
(b)(1), (b)(3), (b)(7)(E)
████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ declined authorization for the authors to release the report
in 2022, it is reasonable to conclude (b)(3) █████ current and historical knowledge of this report and is taking
active steps to prevent the findings from being released.

(U//FOUO) I also know that this report was withheld from DOD and from senior NSC staff █████
(b)(3)
████████████████████████████████████████████████████

(S//NF) (b)(1), (b)(3)
████████████████████████ since at least 2019 but withheld this report from the IC at large, the
DNI Experts Panel, FBI investigators (both the original criminal investigation and subsequent FBI
investigation), DOD partners, and any of the analysts working on various assessments on AHI.

(U//FOUO) Unfortunately I lack the ability to determine if this report was ever known to the DNI, any
element of the prior Presidential administration, or Congressional oversight.  I do not know for certain
why this report was withheld, however the failure to disclose this report and its findings absolutely
impacted the FBI's investigation into the original Havana Health Incidents and the subsequent AHI
investigations.

(b)(1), (b)(3), (b)(7)(E)
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

(b)(1), (b)(3), (b)(7)(E)
████████████████████████████████████████████████████

SECRET// █████████████ /NOFORN/ ████

SECRET / /NOFORN/

(b)(1), (b)(3), (b)(7)(E)

(b)(1), (b)(3)



4 (b)(3)
5

SECRET// /NOFORN

SECRET / /NOFORN

(b)(1), (b)(3)



SECRET / /NOFORN

SECRET// ███████████ /NOFORN

(U//FOUO) (b)(3) ███████████ has not shared the above lead information with DOD or the FBI for investigation or action.

(b)(1), (b)(3)

███████████████████████████

████████████████████████████

█ ▌ ██████████████████████

████████████████████████████

████████████████████████

███████████████████████████

███████████████████

(b)(1), (b)(3)

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

(U//FOUO) In light of the above, any claims that the investigation has been exhaustive and "no stone left unturned" are dubious and appear to be knowingly inaccurate.

(U//FOUO) It may be worth noting that these reports were narrowly disseminated in restricted channels. Only recently, through the prompting of the Defense Intelligence Enterprise, were these reports re-addressed to analysts coordinating on the NIC product. Had DOD not intervened, this information would not have been available to those coordinating, although those drafting both had awareness of the reporting and almost certainly understood the reported data undermined their key



SECRET// ███████████ /NOFORN

SECRET // NOFORN

(b)(1), (b)(3) The effort to withhold this information appears deliberate and intended to shape perceptions on the AHI issue.

S//NF (b)(3)

regarding the

(b)(3)                                                have stated that efforts to further investigate that
                                                                                    (b)(3)

that this would either due to the efforts being abruptly halted or because the documentation shifted to more restricted channels. In either case, a reasonable observer would conclude that the assertion that this lead has been fully exploited and found no further indicators or evidence is dubious at best. Rather, it appears this lead was intentionally buried, however I lack the access or authorities to determine the exact disposition of this lead.

*(U) Moldova*

(b)(1), (b)(3), (b)(7)(E)



*(U) Actions to Suppress and Deter Dissent*

(U//FOUO) (b)(3)                                                several abuses of authority associated with (b)(3)  which appear intended to undermine individuals who dissent (b)(3)  narrative or whose AHI experiences contradict (b)(3)  analytic line. These efforts go beyond addressing differences in analytic opinion and appear intended to circumvent normal analytic processes and

10
1 (b)(3)

SECRET // NOFORN

TOP SECRET// ██████ /NOFORN██

procedures to create an appearance of consensus and suppress reporting and discussion of intelligence and information which contradicts the preferred narrative.



(b)(1), (b)(3), (b)(6)

(b)(1), (b)(3), (b)(7)(E)

*(U)  Suppression of the DNI Experts Panel*

(U//FOUO) On or around 6 October 2022, Deputy Director NCSC disseminated the ODNI Experts Panel report to the designated senior executives for State, DOD, DHS, FBI, DOJ, NSA, CIA, and NGA.  The report is classified TS//(b)(3) ██████ /NOFORN██ This email stated:

> *"We are now providing the attached report to you as part of a distribution so that the full report may be used to inform the IC's work moving forward. Please share it with your leadership and those working on these issues in your organization, as appropriate. "*

SECRET// ██████ / NOFORN██

SECRET// ███████████ /NOFORN ███

(U//FOUO) Despite the clear guidance on the handling of the report, I learned that as of nearly a month after the release of the report, the FBI investigative team had not received an official copy. Rather, they were relying on copies forwarded from partner agencies – notably DOD. To my knowledge, only DOD has made this report widely accessible to those working on this topic in accordance with the guidance of the email.

(S//NF) I also learned that the document had not been disseminated further within CIA to the mission centers or those affected by or working on this topic. Furthermore, I learned a specific NCSC officer contacted individuals within the Department of Defense to question their use of the Experts Panel report in their AHI analytic working group held on or around 6 December 2022. (b)(3) ███████ ███████████████████████████ noted that the document was not to have been widely disseminated and should not be used in this fashion.

(U//FOUO) The suppression of this report appears to be based on the contradictions to the ICA and not any specific operational sensitivity or classification restriction. The classification and access controls of this document are not overly restrictive (analysts working on JWICS would have access to documents bearing these classification markings) nor did the document contain any further handling restrictions.

*(U) Retaliation for Reporting a Domestic Incident*

(S) In or around June 2022, (b)(3) ███ attempted to report information to the FBI regarding suspicious activity and a possible AHI affecting (b)(3), (b)(7)(E) ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████  The individual was reportedly prohibited (b)(3) ██ from contacting the FBI directly and feared they would be fired for reporting directly.

(U//FOUO) As the affected individual stated they were not allowed to contact the FBI directly, ███ (b)(3), (b)(7)(E)

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

(U//FOUO) This delay would knowingly result in the loss of perishable evidence and intelligence. ███ (b)(3), (b)(6), (b)(7)(C) ███████████████████████████████████  the FBI, including specifically the (b)(7)(E) █████████ , made repeated requests to other agencies in multiple venues indicating that timely notification was critical to any effective response.

(b)(1), (b)(3), (b)(7)(E) ████████████████████████████████████████████

████████████████████████████████████

---

[12] (b)(1), (b)(3), (b)(6), (b)(7)(E) ████████████████████████████████████████████

█████████████

[13] (U) Due to fear of retaliation (b)(3) ███ the names are not included in this document but can be provided to the ICIG.

SECRET// ███████████ /NOFORN ███



SECRET// /NOFORN

(U//FOUO) Furthermore, the FBI has stated its intention to treat all reports of AHIs seriously, to the point of (b)(3), (b)(7)(E)

(b)(1), (b)(3), (b)(7)(E)



*(U) Further Potential Witness Intimidation and Obstruction of Justice*

(U//FOUO) The interaction noted above is similar to others (b)(3) who are either witnesses or alleged victims of AHIs, both inside the United States and abroad. These individuals have either been adversely treated after contacting law enforcement (to include the FBI), to include loss of position, loss of assignments, and adverse security treatments (to include psychological evaluations) which have no relationship to the reported incidents. Multiple victims and witnesses have directly stated that they are unwilling to speak with the FBI as they fear the adverse impact to their livelihood and careers due to retaliation (b)(3) .

(U//FOUO) This fear is exacerbated by internal workforce communications which associate contact with the FBI or law enforcement (b)(3) which would be punished.

(U) Part 2: Opposition to (b)(1), (b)(3), (b)(7)(E)

(b)(1), (b)(3)



---

[14] (b)(3), (b)(6) .
[15] (S//NF)
[16] (b)(3)

SECRET// /NOFORN

~~SECRET//~~ ███████████ █NOFORN█ ████

material in question had been nominated but withdrawn and was never passed). ██(b)(3)█ escalated the request to any operations or sources operated by DOD which were related to AHI.  NCSC working level personnel again declined to answer and referred (b)(3) the appropriate DOD authority at OUSD I&S[17].

(S//NF) Subsequent to the above, ███████████ contacted ████ leadership for additional details noting (b)(3) ████ was continuing to push for this information.  (b)(3) ████████████████████████████ ████████████████████████, ██████ was concerned that a failure to respond (b)(3) ██ would create "trouble."  This interaction was verbally discussed within the context of the pending ICA and the need to be aligned with the ICA.

(S//NF) (b)(3) ██████████████████████████, ██████ specifically stated to ████ leadership "We should talk at some point about what this is.  Even though it is DOD, I think we are going to get burnt so we should get an understanding of what DOD sent and (b)(3) ██ might be upset."

████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

(b)(1), (b)(3), (b)(7)(E)

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

---

[17] (b)(3) █████████████████████████████████
[18] ██████████████████████████████████████████
[19] (b)(3) ████████████████████████

~~SECRET//~~ ███████████ █NOFORN█ ████

SECRET// ███████ /NOFORN

**(b)(1), (b)(3), (b)(7)(E)**

**Part 3: Abuse of Authority, Retaliation Concerns**

(U//FOUO) This section pertains to actions by █████████ in relation to the topic and information discussed in Part 2. Based on the totality of available information, the issues in Part 2 appear to be related to the decision and timing of the actions in this section.

(U//FOUO) On or around 01/05/22, NCSC made known the dismissal (b)(3), (b)(6), (b)(7)(C) ████████████████████ Based on available information, (b)(3), (b)(6), (b)(7)(C) was notified of his dismissal in the evening of 01/04 and his office was cleared out and he had departed on 01/05. Staff were not made formally aware of the dismissal until the morning of 01/05.

(S//NF) Note: (b)(3), (b)(6), (b)(7)(C) ████████████ of a 2019 memoranda urging investigation into the AHI topic and subsequently reported an AHI to ODNI Security. ODNI published the IIR of his incident (b)(3), (b)(6), (b)(7)(C) ███████████████ and had to administratively recall and re-issue the report, however this error resulted in (b)(1), (b)(3), (b)(6), (b)(7)(C), (b)(7)(E)

**(b)(1), (b)(3), (b)(6), (b)(7)(C), (b)(7)(E)**

(U//FOUO) (b)(3), (b)(6), (b)(7)(C) dismissal was ostensibly related to a reorganization that demoted the ██████████████ " that would be within the ██████ . Accordingly the position for an AD would have been eliminated in the reorganization.

(U//FOUO) The reorganization was announced in a meeting called by ████████████ (DD) (b)(3), (b)(6)

20 (b)(3)

SECRET// ███████ /NOFORN



SECRET// /NOFORN

(b)(1), (b)(3), (b)(6), (b)(7)(C), (b)(7)(E)

21 (b)(3), (b)(6), (b)(7)(C)

SECRET// /NOFORN

23-cv-03457 (DF-2023-00136) 000023

SECRET // ███████████ / NOFORN

(b)(3)

████████████████████████████████████████

## Part 4: Possible Intent

(U//FOUO) This section lays out potential motivations behind the activity described above. These observations, by nature, require investigation by relevant authorities (IG or Congressional Oversight) to validate or rule out.

(S//NF) Collateral information, available documentation, and witness statements suggests one intention behind this activity is the suppression of any further exploration into the causal mechanism and attribution of AHIs — (b)(1), (b)(3) ████████████████████████

████████████████████████████████

(S//NF) Specifically (b)(3) ███████████████ I have seen documentation indicating ██████
(b)(1), (b)(3)

████████████████████████████████████████

(U//FOUO) Furthermore, per a conversation with an (b)(3) ████████████ in his out-brief with ████████████████████ stated he was confused as to why (b)(3) not share the "big

---

22 (b)(1), (b)(3) ████████████████████████
23 (b)(1), (b)(3) ████████████████████████████
24 (U//FOUO) DOD PowerPoint, October 2022.
25 (b)(1), (b)(3) ████████████

SECRET // ███████████ / NOFORN

~~SECRET//~~ ████████████ ~~//NOFORN~~ ███

secret" behind AHI. (b)(3) ████, ████ was briefed (b)(3) on AHI but would only say to the
(b)(3) ███ "we are all going to be sued."

(U//FOUO) An associated motivation (not incompatible with the above) for the suppression of
information may be related to the implications of AHIs to the ability of the IC and the FBI to protect the
homeland. Should an adversary successfully execute a directed energy attack in the United States
without detection, then logically the FBI and the IC are not as effective in counterintelligence as
portrayed internally and externally. The failure to in subsequent years since 2016 to address this issue
also calls into question the competency and efficacy of agency leadership (b)(3) ████████████
Rather than admit this lack of control and capability, or address shortfalls within the institutions,
suppressing the information to promote MPI as an explanation is a preferable narrative.

(U//FOUO) Additionally, the existence of any AHIs in the homeland, and arguably abroad, in which
attribution is determined would then create a difficult policy question for the USG. Specifically, the
policy question of how the USG would then respond has arisen in analytic discussions on this issue.
Arguably this consideration, even if not overtly stated into the intelligence product, is indicative of
politicization of the intelligence process (violation of the standards in ICD 203). Additionally, such would
be similar to the findings in the unclassified U.S. House of Representatives report entitled *Initial Findings
of the U.S. House of Representatives Joint Task Force on U.S. Central Command Intelligence Analysis*,
dated August 10, 2016.

**(U) Additional References**

(U) The abusive activity also directly violates the Analytic Tradecraft Standards and Intelligence
Community Directive 203, *Analytic Standards.*

(U) The abusive activity is also similar to the issues identified in the U.S. House of Representatives report
entitled *Initial Findings of the U.S. House of Representatives Joint Task Force on U.S. Central Command
Intelligence Analysis,* dated August 10, 2016.

**(U) Additional Derivative Classification Sources:**

- ODNI CG
- FBI NSICG

~~SECRET//~~ ████████████ ~~//NOFORN~~ ███

**From:** (b)(3), (b)(6), (b)(7)(c)
**To:** ICIG-HOTLINETEAM (b)(3)
**Subject:** Urgent Concern - 01/20/2023
**Date:** Friday, January 20, 2023 4:21:59 PM
**Attachments:** ICWPA Disclosure Classified Form v6 01202023.pdf
(b)(3) (b)(6) Memo.pdf
Memo Style Redacted.pdf
Urgent Concern 01202023.pdf

Classification: ~~SECRET/~~ ▇▇▇▇ ~~NOFORN~~ ▇

Upon removal of attachments, this document is UNCLASSIFIED/~~FOUO~~

Classified By (b)(3)
Derived From: ▇▇▇▇▇▇
Declassify On
========================================================

To whom it may concern,

Please see the attached Urgent Concern and associated documents.  Please note that due to concerns with reprisal, I am unable to scan many of the hard copy documents referenced in the attached, but I am willing to make the material available to the ICIG upon request and instruction.

Please note also that due to reprisal concerns, the attached is written as best as I could manage in the allotted time to protect my identity, however the events noted are in some cases specific and singular.  Accordingly, I am willing to share additional details with the ICIG upon request and instruction.

Thank you for your time and assistance.

(b)(3), (b)(6), (b)(7)(c)
=================    ========    ▇▇▇▇▇▇    ======
Classification: ▇ ~~SECRET/~~ ▇▇▇▇▇    ~~NOFORN~~ ▇